## METHODIST PROTESTANT CHURCH v. YOUNG.

### (Filed February 18, 1902.)

ESTATES—*Conditions—Deeds—Wills—The Code, Secs. 2140, 2141.*

> Where a church receives an absolute fee in land, subject to be defeated only by the breach of a condition, and this condition is not broken until after the death of the grantor and a daughter, neither the grantor nor the daughter have any estate in the land at the time of their death, which can be willed or inherited, and upon breach of the condition the estate goes to the heirs-at-law of the grantor.

ACTION by the Methodist Protestant Church of Henderson and others against Jas. R. Young and others, heard by Judge *A. L. Coble,* at May Term, 1901, of the Superior Court of VANCE County.    From a judgment for the plaintiffs, the defendants appealed.

*T. T. Hicks, A. J. Harris* and *R. S. McCoin,* for the plaintiffs.

*T. M. Pittman* and *A. C. Zollicoffer,* for the defendants.

FURCHES, C. J.    On the 21st of September, 1880, in consideration of one dollar, W. A. Harris conveyed the land in controversy to "D. E. Young, Geo. A. Harris and John F. Harris, trustees of the defendant church, and to their successors in office, upon which to build a church for the worship of Almighty God," with full warranty against the right and claim of all other persons whatsoever.    But he provided that if said church "discontinue the occupancy of said lot in manner as aforesaid, then this deed shall be null and void, and the

said lot or parcel of ground shall revert to the said W. A. Harris and his heirs and assigns forever."

The defendants erected a church on said lot soon thereafter, and continued to occupy and use the same as a place of worship, until December, 1900, at which time their church, having increased until the building could not afford suitable accommodation for the congregation, the defendants decided to build a new church; and for the reason that the location had become undesirable for a church, and for the reason that the defendant thought the lot would be more valuable to sell it with the building on it than it would be to tear down the building, which they would have to do to build on the same lot, they purchased another lot near by and built a church on that lot.

In December, 1882, the said W. A. Harris died, leaving a last will and testament, and one son, W. C. Harris, and one daughter, Pattie Young, his only children and heirs-at-law. By his said will he devised and bequeathed his property to his two children, in which he used the following language:   To Pattie Young, "one-half of all my real and personal estate of every kind and description not hereinbefore disposed of."

Walter C. Harris is still living, but Pattie died in October, 1892, without issue, leaving a last will and testament, in which, after making numerous other dispositions of her property, she willed in Item 19 as follows: "It is my will and desire that all the rest and residue of my property, real, personal and mixed, of which I may die seized and possessed, shall be sold and collected by my executor hereinafter named upon such terms as to time as he may deem best."   She then named the defendant as her executor, and he claims one-half of the property in controversy, under this 19th item of Pattie Young's will, and the plaintiff, for the purpose of removing this cloud upon its title, brought this action.

It will be observed that the deed from W. A. Harris to the

plaintiff is an absolute fee, which may have continued forever. But it contains a condition by which this absolute estate may be defeated, which makes it an estate in fee upon condition, or, as it is called in the old books, a base or qualified fee, and is sometimes called a conditional limitation—a condition by which the estate may be defeated, or is limited.

It is admitted that the condition had been broken by the plaintiff, and that W. A. Harris, if living, might enter and revest himself of the estate, and, as he is dead, that his heirs might do so. But it is contended that no one else can do so, and that at the time of the breach, both W. A. Harris (the grantor) and Pattie Young being dead, that Walter C. Harris, being the only heir of said W. A. Harris (and of Pattie Young), is the only one who could enter. Gray's Rules against Perpetuities, page 6, sec. 12 (2). And that since the breach of the condition and before the commencement of this action, the plaintiff has received a quit-claim deed of conveyance from said Walter C. Harris, and is now the absolute owner of said property in fee simple; while the defendant contends that although the breach did not take place until after the death of both W. A. Harris and Pattie Young, the said W. A. had a right or interest in said property, which he could will, and did will, to Pattie, and that the will of W. A. gave her an interest which she could and did will to the defendant, and that the deed from Walter C. to the plaintiff only conveys a one undivided half interest therein, and that this defendant is entitled to the other half thereof.

Until the breach of the condition, neither said W. A. Harris nor said Pattie Young had any interest or estate in this property. The absolute estate was in the plaintiff, and, therefore, could not be in anyone else. Neither W.A. nor Pattie ever had an estate, an interest, nor even an expectancy, in this property, as an heir may have in the estate of his ancestor—as by reason of natural causes the ancestor must die, and the law declares

his heirs, to whom his estate will descend. But in this case there was nothing to limit the estate of the plaintiff, and, until the breach, the grantee had the same rights as if it was a fee simple. 2 Chitty Bl., star pages 109, 110, note 15, and pages 155-6-7; Gray's Rules Against Perpetuities, *supra*. And the grantor having nothing, he could convey nothing by his will, and Pattie had nothing to convey by her will. Suppose that A is the next of kin and heir-at-law of B, and if A should die, his children would be the next of kin and heirs-at-law of B. A dies in the lifetime of B, leaving a last will and testament, in which he willed to C—Item 19—as follows: "It is my will and desire that all the rest and residue of my property, real, personal and mixed, of which I may die *seized and possessed,* shall be sold and collected by my executor hereinafter named," and named Y as his executor. After the death of A, B dies intestate, would it be contended that the estate, coming to A's children from B's estate, passed to C by A's will? It most certainly would not, for the reason that A had no interest in B's estate at the time of his death; and for the same reason the will of W. A. Harris passed no title, estate or interest to Pattie in the property in controversy, because he had no interest in it to convey, and Pattie's will passed nothing to the defendant.

It seems that it is hardly denied by the defendant but what at the common law the estate in the land in controversy would have reverted to the heir-at-law (Walter C. Harris) upon condition broken. But he contends that this is changed by the Act of 1844, chap. 2141, which makes the will speak from the death of the testator, and by the provisions of chapter 2140 of The Code. Other clauses are relied upon by the defendant to sustain his contention, but the following paragraph seems to be most nearly in point and controls the others, if any of them bear upon the question, and that is as follows: "And also to all rights of entry for conditions broken, and other

rights of entry; and, also, to such of the same estate, interest and rights respectively, and other real and personal estate as the testator may be entitled to at the time of his death." This evidently means rights of entry for conditions broken in the lifetime of the testator, and where he had the right of entry while living. This seems to us manifestly the proper construction of this statute—*such rights as he has "at the time of his death."* And, besides, this being manifestly the proper construction of the statute, it puts the statute in harmony with the plainest principles of law governing the rights of property, as it can not be supposed that the Legislature intended to authorize a testator to will what he did not have.

Our opinion, then, is, that at the death of W. A. Harris he had no interest in the property in controversy, and no interest therein passed to Pattie Young by his will; and, of course, if W. A. Harris had no interest, none passed to her under the will of W. A. Harris, nor could she inherit what her father did not have, and she had nothing to will to the defendant Young, and he has no interest in the same.

Our opinion further is, that upon the breach of the condition in 1900, the right of entry and the estate in the land in controversy reverted to Walter C. Harris, the only heir-at-law of the grantee, W. A. Harris, at the time of the breach; and that, as plaintiff has acquired the title of W. C. Harris in and to said land, it is the absolute owner thereof in fee simple.

The judgment below is
Affirmed.

MONTGOMERY, J., did not sit on the hearing of this appeal.

DOUGLAS, J., concurring only in the result. I can not agree with the opinion of the Court that, until the breach of condition, "the absolute estate was in the plaintiff, and, therefore, could not be in anyone else." The deed of W. A. Har-

ris to the plaintiff conveyed a determinable fee, having the incidents of a fee simple except that of alienation, but liable to be entirely defeated. By its very terms it could never be enlarged into a fee simple absolute, except, of course, by the release of the grantor or his heirs. It contained no inherent power of enlargement. It is true such an estate is sometimes called a fee simple limited or conditional, which always seemed to me a misnomer; but it can never be an absolute fee. If it were, nothing would remain in the grantor, and hence no one could take advantage of the possible defeasance. There must remain in the grantor at least a *possibility of reverter,* which, while not an estate, is in itself a right, coupled with the contingent right of entry. This right may be in abeyance, but if it exists at all, actually or potentially, it must exist in the grantor. It seems to me that the possibility of reverter is also an *interest* in the land, and thereby by a double title comes within the provisions of section 2140 of The Code. The word has been thus defined: "Interest means concern; also, advantage, good, share, portion, part, participation; any right in the nature of property, but less than title. Its chief use seems to designate some right attaching to property which either can not or need not be defined with precision." 16 Am. and Eng. Enc. L. (2d Ed.), 1102.

Coke says: "Interest *ex vi termini* in legal understanding, extendeth to estates, rights and titles that a man hath of, in, to, or out of lands; for he is truly said to have an *interest* in them." Co. Litt., 345a.

Interests may be vested, executory or contingent. In *Young v. Young,* 89 Va., 675; 23 L. R. A., 642, it was held, that a contingent remainder was an interest or claim to real estate, and might be disposed of by deed or will under a statute using those terms. In fact, the word seems to be one of extreme elasticity, which may be used to include nearly everything legally connecting the claimant with the subject-matter.

Section 2140 of The Code provides that, "Any testator * *, * may dispose of all real and personal estate, which he shall be entitled to at the time of his death, * * * and the power hereby given shall extend to *all contingent, executory or other future interest* in any real or personal estate, whether the testator may or may not be the person or one of the persons, in whom the same may become vested, or whether he may be entitled thereto under the instrument by which the same was created, or under any disposition thereof by deed or will; and, also, to *all* rights of entry for condition broken, and other rights of entry," etc.

It would be difficult for one to make the language of the statute any broader, and I can not doubt that it includes, and was intended to include, *all* contingent, executory or other future interests, as well as *all* rights of entry, whether vested or contingent. The possibility of reverter is a contingent interest, which becomes vested upon condition broken. Upon entry the grantor or his heir is remitted to his former estate, and the reversion, of course, becomes merged into the fee.

I see no reason of public policy why the statute should exclude a possibility of reverter, with its contingent right of entry, from the power of testamentary disposition; but a very strong reason why it should be included. In England, the home of the common law, the rule of primogeniture made the entry of the heir a very simple matter, as there was practically but one heir; but here, it is different. Determinable fees may last for a very long time, and the grantor may have a large number of descendants scattered over the country. Must they all enter upon condition broken, or can one enter for all and hold as tenant in common? These are questions difficult of solution and inconvenient of application, which may be avoided by testamentary disposition.

I am, therefore, forced to the conclusion that the possibility of reverter could have been devised by either the grantor or

his daughter, Pattie; but, whether it can be brought within the terms of the will of the latter, is a different question. I am not prepared to say that a person "may die seized and possessed" of a possibility of reverter. If it did not pass by Pattie's will, it went to Walter as Pattie's heir, and was by his deed conveyed to the plaintiff. I am thus brought to the conclusion of the Court.