234 F.2d 217
 Robert G. LASSITER and Margaret C. Lassiter, his wife, and B. L. Simmons and Katherine L. Simmons, his wife, Appellants,
v.
TOWN OF OXFORD and Oxford Golf Association, Appellees.
 No. 7029.
 United States Court of Appeals Fourth Circuit.
 Argued April 18, 1956.
 Decided June 1, 1956.
 
 R. P. Upchurch, Raleigh, N. C. (Murray Allen, Raleigh, N. C., on the brief), for appellants.
 T. S. Royster and Hugh M. Currin, Oxford, N. C. (B. S. Royster, Jr., and Royster & Royster, Oxford, N. C., on the brief), for appellees.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This suit was brought in the District Court by certain non-residents of North Carolina to recover possession of a tract of forty (40) acres of land in or near the Town of Oxford, North Carolina, which the plaintiffs conveyed to the town by deed in February 1934, to have and to hold so long as the town should keep and maintain it as a golf course; but if the town should cease to maintain and use it for this purpose, then it should revert to the grantors. The defendants were the Town of Oxford and the Oxford Golf Association, an unincorporated body, to which the town leased the land on November 25, 1944, for a period of twenty-five years. The lease provided that the Golf Association should have and hold the land on condition that it would at all times maintain a golf course on the land at its own expense, but if it should fail to do so, as provided in the deed from the plaintiffs to the town, the lease would terminate. Thereafter the golf course was maintained by the Golf Association, or its alter ego the Oxford Golf Club, which is a corporation. The plaintiffs contend that these transactions constituted a breach of the condition upon which the plaintiffs conveyed the land to the town and caused the reversion of the title to them; but the District Judge held that there had been substantial compliance with the condition in the deed and dismissed the suit.
 
 
 2
 It is clear, under the law of North Carolina, that the provisions in the deed created a valid condition subsequent with which the grantee was bound to comply on pain of loss of title and the reversion of the land to the grantors. See Methodist Protestant Church v. Young, 130 N.C. 8, 40 S.E. 691; Brittain v. Taylor, 168 N.C. 271, 84 S.E. 280. Conditions of this sort however, are not favored in the law and are to be construed strictly against the grantor, for they tend to defeat estates, see Hall v. Quinn, 190 N.C. 326, 329, 130 S.E. 18; Ange v. Ange, 235 N.C. 506, 509, 71 S.E. 2d 19, and hence substantial compliance by the grantee is held to be sufficient, see Cox v. Hinshaw, 226 N.C. 700, 704, 40 S. E.2d 358.
 
 
 3
 The question for decision, therefore, is whether there was in this case substantial compliance with the condition of the deed, that the town should keep and maintain the land as a golf course. So far as the use of the property for this purpose is concerned, the condition has been satisfied ever since the land was conveyed to the town, and provision for continuance of the use has been made. Moreover, the course has been operated for the benefit of all the people, as befits a municipal enterprise, since the evidence shows that any member of the community is privileged to use the golf course upon the payment of a small fee.
 
 
 4
 The only criticism that is leveled at the present arrangement is that the actual operation of the course is in the hands of a group of private persons under a lease and not in the hands of agents of the town itself. We do not think, however, that this circumstance amounts to a substantial departure from the original purpose and condition of the grant. The town has not surrendered control of the project since the lease expressly provides for its termination if the club fails to maintain the course, as provided in the Lassiter deed.
 
 
 5
 Moreover, the circumstances under which the golf course has been and is being operated by the club do not conflict with this general purpose. The club is given the right to fix the charges for the use of the course and to determine the eligibility of its members and to pass bylaws to regulate their conduct; and it is conceivable that in the exercise of this privilege conditions might be prescribed which would convert what was designed for a municipal golf course into a private organization. But this has not occurred, for, as we have seen, anyone can use the course upon payment of a green's fee. Elected members of the club pay regular dues out of which the course is maintained without expense to the town. Doubtless the members enjoy the privileges of the club house and other facilities which the club has provided, but it does not appear that non-members have been excluded from any facility provided for those who play the game.
 
 
 6
 This arrangement does not differ in practical effect from the municipal leasing of the facilities of public parks or recreational areas to private parties which, in general, is held to be a valid exercise of municipal powers provided the public is not excluded and the public use for which the property is held is promoted by the arrangement. City of Port Arthur v. Young, Tex.Civ.App. 1931, 37 S.W.2d 385; Cascambas v. City of Newport, 45 R.I. 343, 121 A. 534; Cohen v. Samuel, 367 Pa. 268, 80 A.2d 732; International Garden Club v. Hennessy, 104 Misc. 141, 172 N.Y.S. 8; Cf. Sutcliffe Co. v. City of Louisville, 205 Ky. 718, 266 S.W. 375; Central Land Co. v. Grand Rapids, 302 Mich. 105, 4 N.W.2d 485, 144 A.L.R. 478.
 
 
 7
 The circumstances under which the golf course was originally established in 1934 support the conclusion we have reached; and we are at liberty to refer to them, for the deed did not prescribe whether the town should maintain the course directly through its own agencies or employees or should entrust the operation of the course to a lessee or licensee, as is not infrequently done. In North Carolina the nature and object of an agreement and the situation of the parties may be considered in determining the meaning of the contract when the language is susceptible of more than one interpretation. Hinton v. Vinson, 180 N.C. 393, 398, 104 S.E. 897; Belk's Department Store v. George Washington Fire Ins. Co., 208 N.C. 267, 270, 180 S. E. 63; Town of Lumberton v. Hood, 204 N.C. 171, 176, 167 S.E. 641.
 
 
 8
 The evidence shows that in 1934, when it was first determined to construct the golf course, it was the intention of the members of the Lassiter family to convey the land to the Golf Association and in this way to set up the course across the public highway from the family home; and a deed to this end was prepared and delivered, and money was spent by the members of the Golf Association to get the land in shape. Their funds however proved insufficient and it was learned that if the land should be conveyed to the town W. P. A. money could be obtained from the United States. Thereupon the plan was changed, the deed to the Golf Association was not recorded and the deed before us in the present suit was executed, and thereafter the circumstances took place which have already been related. Obviously the establishment of the golf course was the primary purpose and that purpose has been carried out by the town in a fashion which has been given general approval by the courts as a proper exercise of municipal authority. We think that the devotion of the land in the pending case for the purpose of a golf course, together with the control of the enterprise retained by the town, amounts to a substantial compliance with the terms of the deed.
 
 
 9
 Affirmed.