AZALEA MATTOX AND HUSBAND, TOM MATTOX v. STATE OF NORTH
    CAROLINA AND NORTH CAROLINA DEPARTMENT OF MOTOR
    VEHICLES

No. 85

(Filed 9 February 1972)

**1. Deeds § 16— fee on condition subsequent**

The law does not favor a construction of the language contained
in a deed which would constitute a condition subsequent unless the
intention of the parties to create such a restriction upon the title is
clearly manifested.

**2. Deeds § 16— fee on condition subsequent — reservation of right to
re-enter**

A fee upon condition subsequent is not created unless the grantor
expressly reserves the right to re-enter or provides for a forfeiture
or for a reversion or that the instrument shall be null and void.

**3. Deeds § 16— fee on condition subsequent — re-entry — action for pos-
session**

In a fee upon a condition subsequent, there is no automatic re-
version upon the happening of the stated contingency, but the grantor
must exercise the right of re-entry for conditions broken; the bring-
ing of a possessory action upon the breach of the condition subsequent
is equivalent to a re-entry.

**4. Deeds § 16— creation of fee on condition subsequent**

A fee on condition subsequent was created by a deed conveying
land "upon condition however," with the conditions fully set forth,
followed by the provision that "if and when" the grantee fails to
carry out the specified conditions, "the said land shall revert to, and
the title shall vest in" the grantor, her heirs and assigns "with the
same force and effect as if this deed had not been made."

**5. Deeds § 16— breach of condition subsequent — recovery of premises
by grantor**

The grantor of land is entitled to recover the premises for breach
of a condition subsequent that the State "perpetually and continuously
keep, maintain and operate" the premises for a Highway Patrol Radio
Station and Highway Patrol Headquarters, where Highway Patrol
activities on the premises were abandoned for a period of time in
1968, and only four patrolmen used in connection with the revoca-
tion of drivers' licenses are now stationed in the building otherwise
exclusively used for examining persons and issuing drivers' licenses,
with the occasional use of an unmanned radio installed therein.

**6. Rules of Civil Procedure § 56— summary judgment — undisputed facts**

Summary judgment was properly entered where the facts were
undisputed, the effect of the undisputed facts presenting a question
of law for the court.

APPEAL by plaintiffs from *Grist, J.*, at the 19 April 1971 Session of MECKLENBURG Superior Court. This case was docketed and argued as case No. 153, Fall Term 1971.

Plaintiffs instituted this action against the State of North Carolina and one of its agencies, the Department of Motor Vehicles, to recover certain real estate plaintiffs had conveyed to the State of North Carolina in a deed dated 12 March 1949. This property is located on Wilkinson Boulevard, Charlotte, North Carolina.

Plaintiffs allege they are entitled to the property by virtue of a breach of the conditions contained in the deed. The conveyance was made on the following conditions:

"To HAVE AND TO HOLD the premises herein granted unto the party of the second part forever, upon condition however, that the said party of the second part shall, within sixty days from the date of this instrument, begin construction of a North Carolina Highway Patrol Radio Station and Patrol Headquarters Building upon the aforesaid granted premises, and shall complete the same within six months from date of this instrument, and shall from and after said period of six months, perpetually and continuously keep, maintain and operate said North Carolina Highway Patrol Radio Station and Patrol Headquarters upon said premises, and upon the further conditions that, if the said party of the second part, shall fail, neglect, or omit, to begin construction of said Radio Station and Patrol Headquarters Building upon said premises within sixty days from date of this instrument, or and fail to complete same within six months from date of this instrument, and if and when the said second party shall fail continuously and perpetually to keep, maintain and use such Radio Station and Patrol Headquarters, for the purposes aforesaid, after the expiration of the said six months from date of this instrument, and in any of such events, the said land shall revert to, and the title shall vest in the Grantor, Mrs. Azalea Mattox, her heirs and assigns, with the same force and effect as if this deed had not been made, executed or delivered."

The uncontradicted evidence and stipulated facts in this case show the following: The State built a Highway Patrol

Mattox v. State

Radio Station and Patrol Headquarters on the land within the time specified in the deed and fully complied with the conditions in the deed pertaining to the use of the land until the spring and summer of 1968. In 1959 an additional Highway Patrol facility was constructed on U. S. 29 North in Charlotte, North Carolina. From 1959 to 1968 there were two Patrol facilities in Mecklenburg County—one at the Wilkinson Boulevard location and one on U. S. 29 North. From the spring of 1968 to November or December 1968, the following series of events transpired: In the spring of 1968 the radio dispatcher assigned to the Wilkinson Boulevard facility resigned, and no dispatcher has been assigned for the operation of the radio located there since that time, although the radio itself was turned on and operational during the summer and spring of 1968. In April 1968 the gas pump located on the premises for the purpose of fueling State-owned vehicles was closed. In June 1968 the telephone located on the premises for official use by the Highway Patrol was disconnected. During the spring or summer of 1968 all Highway Patrol personnel assigned to the Wilkinson Boulevard headquarters were reassigned to the U. S. 29 North facility, pursuant to an order of Sergeant M. B. Lyerly, First Sergeant of the Charlotte District, with the approval of both Captain R. H. Nutt of the Highway Patrol and the Raleigh office of the Highway Patrol. Around Thanksgiving in 1968 plaintiffs met with Captain Nutt and Sergeant Lyerly concerning the suspension of the Patrol activities at the Wilkinson Boulevard location. Shortly thereafter, certain activities by defendants were resumed on these premises.

Joe W. Garrett, now Commissioner of Motor Vehicles, filed an affidavit on 16 April 1971 in which he stated that the Commissioner of Motor Vehicles in 1968 neither authorized nor approved of any slow down of Highway Patrol operations at the Highway Patrol station, and that when the Commissioner learned of this slow down he immediately issued an order that normal Patrol operations be resumed. As a result, the gas pump was reopened, the telephone was reinstalled, and four highway patrolmen, members of the License Revocation Division of the Highway Patrol, were assigned to the facility. These patrolmen operate and use the radio located on the premises occasionally in the course of their duties. They report to and are under the supervision of the U. S. 29 North office.

Mattox v. State

The North Carolina Highway Patrol is a division of the North Carolina Department of Motor Vehicles. At the time the deed was executed by the plaintiffs to the State, one of the functions of the North Carolina Highway Patrol was to examine persons for and issue drivers' licenses. Later this responsibility was transferred to another division, the Driver License Division of the Department of Motor Vehicles, and since that time the building located on the land in question has been continuously used for the purpose of conducting driver license examinations and issuing drivers' licenses. After the Highway Patrol personnel were reassigned to the U. S. 29 North facility in the spring and summer of 1968, the building was occupied exclusively by employees of the Driver License Division and was used exclusively for examining persons for and issuing drivers' licenses until the four patrolmen, members of the Revocation Division of the Highway Patrol, were reassigned to the Wilkinson Boulevard facility. The telephone listed for the State Highway Patrol is located in the U. S. 29 North facility. The telephone for the Driver License Division is listed for the Wilkinson Boulevard premises.

The case was heard before Judge William Grist on a motion by defendants for summary judgment and a cross motion by plaintiffs for summary judgment. Based on the pleadings, the depositions of Sergeant M. B. Lyerly and Officer C. E. Thomas of the Highway Patrol, and the affidavit of Joe W. Garrett, Commissioner of Motor Vehicles, the court made findings of fact substantially as set out above and concluded as a matter of law:

"1. That the deed from plaintiffs to the State of North Carolina recorded in Book 1366, at page 153, Mecklenburg County Registry, created a valid fee upon condition subsequent estate.

"2. That the unauthorized slow down in normal Highway Patrol activities at the Wilkinson Boulevard Station during the period from April to November or December of 1968 at most constitutes a mere technical breach of the conditions contained in said deed, which was immediately remedied by the Commissioner of Motor Vehicles after he became aware of same; that such unauthorized technical breach would not and did not work a forfeiture of defendants' estate in said lands.

"3. That at no time did the defendants willfully or intentionally abandon the premises for the uses and purposes required by the conditions contained in the deed.

"4. That at all times during 1968 and at all times thereafter until the filing of this action, defendants have substantially complied with the conditions contained in said deed."

The court then denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment, from which judgment plaintiffs appealed to the Court of Appeals. The case was transferred to this Court under our general order dated July 31, 1970.

*Robertson & Brumley for plaintiff appellants.*

*Attorney General Robert Morgan, Assistant Attorney General T. Buie Costen, and Staff Attorney Roy A. Giles, Jr., for defendant appellees.*

MOORE, Justice.

Plaintiffs contend that the court erred in denying plaintiffs' motion for summary judgment and in entering summary judgment for defendants. They assert that the deed from the plaintiffs to the State of North Carolina conveyed to the State a fee upon conditions subsequent, which conditions defendants have breached, and that plaintiff Azalea Mattox is entitled to recover the property in question.

[1]    The law does not favor a construction of the language contained in a deed which would constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is clearly manifested. *Lassiter v. Town of Oxford,* 234 F. 2d 217 (4th Cir. 1956); *Board of Education v. Edgerton,* 244 N.C. 576, 94 S.E. 2d 661 (1956). G.S. 39-1 provides:

"When real estate is conveyed to any person, the same shall be held and construed to be a conveyance in fee, whether the word 'heir' is used or not, unless such conveyance in *plain and express words shows,* or it is *plainly intended* by the conveyance or some part thereof, that the *grantor meant to convey an estate of less dignity.*" (Emphasis added.)

In construing a deed, Justice Adams, speaking for the Court in *Willis v. Trust Co.*, 183 N.C. 267, 111 S.E. 163 (1922), said:

"The rigid technicalities of the common law have gradually yielded to the demand for a more rational mode of expounding deeds. Hence, to discover the intention of the parties is now regarded as the chief essential in the construction of conveyances. The intention must be gathered from the whole instrument in conformity with established principles, and the division of the deed into formal parts is not permitted to prevail against such intention; for substance, not form, is the object sought. If possible, effect must be given to every part of a deed, and no clause, if reasonable intendment can be found, shall be construed as meaningless. *Springs v. Hopkins,* 171 N.C. 486; *Jones v. Sandlin,* 160 N.C. 155; *Eason v. Eason,* 159 N.C. 540; *Acker v. Pridgen,* 158 N.C. 337; *Real Estate Co. v. Bland,* 152 N.C. 231; *Featherston v. Merrimon,* 148 N.C. 199; *Gudger v. White,* 141 N.C. 513."

[2, 3] A fee upon a condition subsequent is not created unless the grantor expressly reserves the right to re-enter or provides for a forfeiture or for a reversion or that the instrument shall be null and void. *Williams v. Thompson,* 216 N.C. 292, 4 S.E. 2d 609 (1939); *Lassiter v. Jones,* 215 N.C. 298, 1 S.E. 2d 845 (1939); *Church v. Refining Co.,* 200 N.C. 469, 157 S.E. 438 (1931); *Braddy v. Elliott,* 146 N.C. 578, 60 S.E. 507 (1908); *Helms v. Helms,* 135 N.C. 164, 47 S.E. 415 (1904). However, if the deed contains both the apt words to create a condition and an express clause of re-entry, reverter, or forfeiture, an estate on condition subsequent has been created. *Bernard v. Bowen,* 214 N.C. 121, 198 S.E. 584 (1938); *Sharpe v. R. R.,* 190 N.C. 350, 129 S.E. 826 (1925); *Huntley v. McBrayer,* 169 N.C. 75, 85 S.E. 213 (1915); *Brittain v. Taylor,* 168 N.C. 271, 84 S.E. 280 (1915); *Church v. Young,* 130 N.C. 8, 40 S.E. 691 (1902). See 19 N.C.L. Rev. 334 (1941) for an excellent treatise on *Estates on Condition and on Special Limitation in North Carolina* by Professor Frederick B. McCall. In a fee upon a condition subsequent, there is no automatic reversion upon the happening of the stated contingency, but the grantor must exercise the right of re-entry for conditions broken. However, the bringing of a possessory action upon the breach of the condi-

tion subsequent is equivalent to a re-entry. *Brittain v. Taylor, supra.* See 19 N.C.L. Rev. 334, 347.

[4] Applying these principles to the present case, the words used in the deed "upon condition however,"—then fully setting out the conditions, followed by the provision that "if and when" the grantee fails to carry out the specified conditions, "the said land shall revert to, and the title shall vest in the Grantor, Mrs. Azalea Mattox, her heirs and assigns, with the same force and effect as if this deed had not been made, executed or delivered," —are sufficient to show the grantors intended to create a fee on condition subsequent, and by this language they did create such estate. *Sharpe v. R. R., supra.* The trial court so held.

[5] The real question involved in the present case then becomes: Did defendants' acts constitute such breach of the conditions as to entitle plaintiff Azalea Mattox to recover the premises? Plaintiffs contend that the acts of defendants in the spring and summer of 1968, when all Highway Patrol activities on the premises in question were suspended, were clearly a violation of the conditions that the State "perpetually and continuously keep, maintain and operate" the premises for a Highway Patrol Radio Station and Highway Patrol Headquarters, and that thereupon the land reverted to the grantor, Mrs. Azalea Mattox. Plaintiffs further contend that the Patrol activities resumed in the fall of 1968 were not sufficient to comply with the requirements that the premises be used for a Patrol Radio Station and Patrol Headquarters. The radio in the building was not manned in a regular manner, and only four patrolmen (usually only two) who were assigned to the License Revocation Division of the Highway Patrol were stationed there. These men were under the supervision of and reported to the U. S. 29 North office. A "headquarters" is defined as "the quarters of any chief officer, or head of a police force; the center of operations and of authority." Webster's New Collegiate Dictionary (1959). Patrolman Thomas in his deposition defined a District Highway Patrol Headquarters as a place where a first sergeant, a line sergeant, and a secretary were located, and a large room was provided for patrolmen to prepare and turn in their reports, with a mail box furnished each patrolman. None of these conditions were met at the Wilkinson Boulevard facility after 1968. Both Sergeant Lyerly and Officer Thomas stated that they considered the U. S. 29 North facility to be the District Patrol Headquarters in Mecklenburg County.

Plaintiffs conclude that the presence of four patrolmen used only in connection with the revocation of drivers' licenses, stationed in a building otherwise exclusively used for examining persons and issuing drivers' licenses, with the occasional use of an unmanned radio installed therein, could not possibly constitute a State Highway Patrol Radio Station and State Highway Patrol Headquarters.

At the time plaintiffs executed the deed to the State, the issuance of drivers' licenses was the responsibility of the North Carolina Highway Patrol. Subsequently, this responsibility was transferred to another division within the Department of Motor Vehicles. Defendants contend that under *Lassiter v. Town of Oxford, supra,* this continued usage for the issuance of drivers' licenses would constitute substantial compliance. In *Lassiter* property was conveyed to the town of Oxford, North Carolina, so long as it was used by the town as a golf course, and the deed provided for a reverter should the property cease to be used for such purpose. After about ten years, the town leased the property to the Oxford Golf Association for twenty-five years. The lease provided that the Association must at all times maintain a golf course upon the land, and that if it failed to do so, the lease would terminate. The grantor brought suit alleging the conditions were breached. The Court held that there was substantial compliance since the property was being maintained and operated as a golf course even though by an agent of the town rather than by the town itself, and therefore no forfeiture resulted. The present case is clearly distinguishable. Without question, the premises are no longer used as a Highway Patrol Headquarters, and it is doubtful if the location of a radio on the premises, unmanned and only used occasionally, would meet the requirements of a Highway Patrol Radio Station. The Highway Patrol completely abandoned the Wilkinson Boulevard building so far as Highway Patrol activities were concerned in the spring and summer of 1968 and only attempted token compliance with the conditions set out in the deed after plaintiffs met with Captain Nutt and Sergeant Lyerly concerning the suspension of Patrol activities there. Certainly the defendants did not comply with the conditions contained in the deed during the spring and summer of 1968. Neither are they doing so now. This is not merely a "technical breach" as found by the trial court.

**[6]** Procedurally, the question in the instant case is reduced to whether or not the pleadings, together with the depositions and affidavit, show there is any genuine issue as to any material fact and whether any party is entitled to a judgment as a matter of law. A careful review of the record reveals that the parties were in agreement as to all the factual particulars concerning the deed from the plaintiffs to the State and the use of the property thereafter. There was no "genuine issue as to any material fact." The effect of the undisputed facts was a question of law for the court to determine. G.S. 1A-1, Rule 56; *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), and authorities therein cited.

Defendant State of North Carolina knew the conditions in the deed when it was accepted, and the State is bound by these conditions. *Story v. Walcott*, 240 N.C. 622, 83 S.E. 2d 498 (1954).

The State has had the use of the property for more than twenty years at no cost. Apparently the property is no longer suited for and is not being used for the purpose for which it was conveyed. Under these circumstances, plaintiff Azalea Mattox is entitled to recover the premises described in the deed.

The trial court erred in entering summary judgment for the defendants. The case is remanded to the Superior Court of Mecklenburg County with instructions that summary judgment be entered in favor of the plaintiffs in accordance with this opinion.

Error and remanded.