STATION ASSOCIATES, INC.; LLOYD L. ALLEN, SR.; SUSAN BARNETTE BURNS; JERRY JAMES BARNETTE; MARK TY BARNETTE; KEVIN CLAY BARNETTE; JANET EVERITT BOYETTE; CORDELIA B. DAVIS; MARGARET GENDREUX CROW; MYRTLE ESTELL GENDREUX WATSON; DOROTHY EVERITT BOND; AND HARRY CLARK COOPER v. DARE COUNTY

No. 337PA98

(Filed 7 May 1999)

**Deeds— statement of purpose—no language of reversion or termination—fee simple absolute**

An 1897 deed conveying land to the United States for a life-saving station conveyed a fee simple absolute rather than a fee simple determinable where the deed contained no express and unambiguous language of reversion or termination upon condition broken and does not indicate that the interest of the United States in the property would automatically expire or revert to the grantor upon the discontinued use of the property as a life-saving station. Language in the granting clause giving the United States the right to "use and occupy" the property for the stated purposes and the word "term" in the warranty clause did not constitute a clear expression that the property should revert to the grantor or that the estate would automatically terminate upon the happening of a certain event.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 130 N.C. App. 56, 501 S.E.2d 705 (1998), reversing orders entered by Ragan, J., on 23 September 1996, 6 January 1997, and 29 January 1997 in Superior Court, Dare County, and remanding for further proceedings. On 3 December 1998, the Supreme Court granted discretionary review of additional issues. Heard in the Supreme Court 9 March 1999.

*Moore & Van Allen, PLLC, by David E. Fox and Jeffrey M. Young; and Young Moore & Henderson, P.A., by John N. Fountain and Dawn M. Dillon, for plaintiff-appellants and -appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by Mark A. Davis, for defendant-appellant and -appellee.*

PARKER, Justice.

This title dispute to approximately ten acres of land at the northern tip of Hatteras Island, Dare County, originates in an 1897 deed. In

that year Jessie B. Etheridge conveyed the land in issue (hereinafter "the property") to the United States in the following deed:

Treasury Department
Life-Saving Service—Form No. 12.

Whereas, The SECRETARY OF THE TREASURY has been authorized by law to establish the LIFE-SAVING STATION herein described;

And whereas, Congress, by Act of March 3, 1875, provided as follows, viz.: "And the Secretary of the Treasury is hereby authorized, whenever he shall deem it advisable, to acquire, by donation or purchase, [o]n behalf of the United States, the right to use and occupy sites for life-saving or life-boat stations, houses of refuge, and sites for pier-head Beacons, the establishment of which has been, or shall hereafter be, authorized by Congress;"

And whereas, the said Secretary of the Treasury deems it advisable to acquire, on behalf of the United States, the right to use and occupy the hereinafter-described lot of land as a site for a Life-Saving Station, as indicated by his signature hereto:

Now, this Indenture between Jessie B. Etheridge, party of the first part, and the United States, represented by the Secretary of the Treasury, party of the second part, WITNESSETH that the said party of the first part, in consideration of the sum of two hundred dollars by these presents grant[s], demise[s], release[s], and convey[s] unto the said United States all that certain lot of land situate in Nags Head township, County of Dare and State of North Carolina, and thus described and bounded: Beginning at a cedar post bearing from the South West corner of the Oregon Life Saving Station South 40° West and distant 28.24 chains from said post South 68° West 10 chains to post, thence South 22° E. 10 chains to post, thence North 68° E. 10 chains to post, thence North 22° W. 10 chains to first Station containing 10 acres, be the contents what they may, with full right of egress and ingress thereto in any direction over other lands of the grantor by those in the employ of the United States, on foot or with vehicles of any kind, with boats or any articles used for the purpose of carrying out the intentions of Congress in providing for the establishment of Life-Saving Stations, and the right to pass over any lands of the grantor in any manner in the prosecution of said purpose;

and also the right to erect such structures upon the said land as the United States may see fit, and to remove any and all such structures and appliances at any time; the said premises to be used and occupied for the purposes named in said Act of March 3, 1875:

To have and to hold the said lot of land and privileges unto the United States from this date.

And the said party of the first part for himself, executors, and administrators do[es] covenant with the United States to warrant and defend the peaceable possession of the above-described premises to the United States, for the purposes above named for the term of this covenant, against the lawful claims of all persons claiming by, through, or under Jessie B. Etheridge.

And it is further stipulated, that the United States shall be allowed to remove all buildings and appurtenances from the said land whenever it shall think proper, and shall have the right of using other lands of the grantor for passage over the same in effecting such removal.

In witness whereof, the parties hereto have set their hands and seals this 8th day of March, A.D. eighteen hundred and ninety-seven.

Signed, sealed, and delivered in presence of—

s/ J.B. Etheridge

s/ L.J. Gage
Secretary of the Treasury

The United States took possession and duly established a life-saving station on the property operated by the Life-Saving Service, a part of the United States Treasury Department. The United States Coast Guard was thereafter created; and sometime prior to 1915 the Coast Guard took over operation of the station, which was then named the Oregon Inlet Coast Guard Station. In December of 1989, the U.S. Coast Guard abandoned the station. On 17 July 1992 the United States quitclaimed its interest in the property to Dare County.

Plaintiffs, who are the heirs of the original grantor, Jessie B. Etheridge, along with a corporation that purchased from the heirs an ownership interest in the land, claimed title to the property and instituted this action against Dare County.

STATION ASSOC., INC. v. DARE COUNTY

[350 N.C. 367 (1999)]

The trial court granted judgment on the pleadings to defendant Dare County, concluding as a matter of law that Dare County had title to the property in fee simple absolute. The Court of Appeals reversed and remanded holding that the United States was granted only a fee simple determinable by the 1897 deed and that a genuine issue of fact existed as to whether a condemnation proceeding by the United States in 1959 extinguished plaintiffs reversionary interest. 130 N.C. App. 56, 501 S.E.2d 705 (1998). We now reverse the Court of Appeals and reinstate the judgment of the trial court.

Before this Court defendant argues that the 1897 deed conveyed to the United States a fee simple absolute, but even if the estate conveyed was a fee simple determinable with a possibility of reverter, in 1959 when the United States created the Cape Hatteras National Seashore Recreation Area by condemning properties along the outer banks, plaintiffs' possibility of reverter in the property was extinguished by the condemnation. We do not need to address the second part of defendant's argument as we conclude that the 1897 deed conveyed to the United States not a fee simple determinable, but a fee simple absolute.

An estate in fee simple determinable is created by a limitation in a fee simple conveyance which provides that the estate shall automatically expire upon the occurrence of a certain subsequent event. *Elmore v. Austin*, 232 N.C. 13, 20-21, 59 S.E.2d 205, 211 (1950). "The law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is clearly manifested." *Washington City Bd. of Educ. v. Edgerton*, 244 N.C. 576, 578, 94 S.E.2d 661, 664 (1956); *see also First Presbyterian Church of Raleigh v. Sinclair Refining Co.*, 200 N.C. 469, 473, 157 S.E. 438, 440 (1931). "Ordinarily a clause in a deed will not be construed as a condition subsequent, unless it contains language sufficient to qualify the estate conveyed and provides that in case of a breach the estate will be defeated, and this must appear in appropriate language sufficiently clear to indicate that this was the intent of the parties." *Ange v. Ange*, 235 N.C. 506, 508, 235 N.C. 755, 71 S.E.2d 19, 20 (1952); *see also First Presbyterian*, 200 N.C. at 473, 157 S.E. at 440; *Braddy v. Elliott*, 146 N.C. 578, 580-81, 60 S.E. 507, 508 (1908).

This Court has declined to recognize reversionary interests in deeds that do not contain express and unambiguous language of reversion or termination upon condition broken. *Washington City*, 244 N.C. at 577, 578, 94 S.E.2d at 662, 663 (habendum clause con-

tained expression of intended purpose—"for school purposes"; held fee simple because no power of termination or right of reentry was expressed); *Ange*, 235 N.C. at 508, 71 S.E.2d at 20 (habendum clause contained the language "for church purposes only"; nevertheless held to be an indefeasible fee since there was "no language which provides for a reversion of the property to the grantors or any other person in case it ceases to be used as church property"); *Shaw Univ. v. Durham Life Ins. Co.*, 230 N.C. 526, 529-30, 53 S.E.2d 656, 658 (1949) (property and the proceeds therefrom were to be "perpetually devoted to educational purposes"; held fee simple absolute since there was "nothing in the . . . deed to indicate the grantor intended to convey a conditional estate," and there was "no clause of re-entry, no limitation over or other provision which was to become effective upon condition broken"); *Lassiter v. Jones*, 215 N.C. 298, 300-01, 1 S.E.2d 845, 846 (1939) (deed conveyed property "for the exclusive use of the Polenta Male and Female Academy; it shall be used exclusively for school purposes"; held to have conveyed a fee simple "for the reason that nowhere in the deed is there a reverter or reentry clause"); *First Presbyterian*, 200 N.C. at 470-71, 473, 157 S.E. at 438-39, 440 (habendum clause indicated that the property was to be used for church purposes only; held to be an indefeasible fee simple, notwithstanding the language in the habendum clause, since there was "no language showing an intent that the property shall revert to the grantor . . . or that the grantor . . . shall have the right to reenter."); *Hall v. Quinn*, 190 N.C. 326, 328-29, 130 S.E. 18, 19-20 (1925) (granting clause and habendum clause both indicated that the property was "to be used for the purposes of education" only; held to be an estate in fee simple because there was "no clause of re-entry; no forfeiture of the estate upon condition broken"); *Braddy*, 146 N.C. at 580-81, 60 S.E. at 508 (recitals that the grantor was to improve the property did not create an estate upon condition since there was an absence of an express reservation in the deed of a right of reentry).

We have stated repeatedly that a mere expression of the purpose for which the property is to be used without provision for forfeiture or reentry is insufficient to create an estate on condition and that, in such a case, an unqualified fee will pass. *Washington City*, 244 N.C. at 578, 94 S.E.2d at 664; *Ange*, 235 N.C. at 508, 71 S.E.2d at 20; *Shaw Univ.*, 230 N.C. at 530, 53 S.E.2d at 658; *Lassiter*, 215 N.C. at 302, 1 S.E.2d at 847.

However, in those cases in which the deed contained express and unambiguous language of reversion or termination we have con-

strued a deed to convey a determinable fee or fee on condition subsequent. *Mattox v. State*, 280 N.C. 471, 472, 186 S.E.2d 378, 380 (1972) (habendum clause contained condition that if the grantee failed to continuously and perpetually use the property as a Highway Patrol Radio Station and Patrol Headquarters, the land "shall revert to, and title shall vest in the Grantor"); *City of Charlotte v. Charlotte Park & Rec. Comm'n*, 278 N.C. 26, 28, 178 S.E.2d 601, 603 (1971) (habendum clause contained language that "upon condition that whenever the said property shall cease to be used as a park . . . , then the same shall revert to the party of the first part"); *Lackey v. Hamlet City Bd. of Educ.*, 258 N.C. 460, 461, 128 S.E.2d 806, 807 (1963) (deed contained paragraph providing, "It is also made a part of this deed that in the event of the school's disabandonment (failure) . . . this lot of land shall revert to the original owners"); *Charlotte Park & Rec. Comm'n v. Barringer*, 242 N.C. 311, 313, 88 S.E.2d 114, 117 (1955) (deed indicated that in the event the lands were not used solely for parks and playgrounds, the "said lands shall revert in fee simple to the undersigned donors"), *cert. denied*, 350 U.S. 983, 100 L. Ed. 851 (1956); *Pugh v. Allen*, 179 N.C. 307, 308, 102 S.E. 394, 394 (1920) (deed contained provision that "in case the said James H. Pugh should die without an heir the following gift shall revert to the sole use and benefit of my son"); *Smith v. Parks*, 176 N.C. 406, 407, 97 S.E. 209, 209 (1918) (deed indicated that "should [grantor] die without leaving such heir or heirs, then the same is to revert back to her nearest kin"); *Methodist Protestant Church of Henderson v. Young*, 130 N.C. 8, 8-9, 40 S.E. 691, 691 (1902) (deed expressed that if the church shall "discontinue the occupancy of said lot in manner as aforesaid, then this deed shall be null and void and the said lot or parcel of ground shall revert to [the grantor]").

Applying this law to the deed in the present case, we note that the 1897 document is completely devoid of any language of reversion or termination. Nowhere does the deed indicate that the United States' interest in the property would automatically expire or revert to the grantor upon the discontinued use of the property as a life-saving station. Plaintiffs contend, however, that the deed contains certain phrases expressive of the parties' intent that the estate was to be of limited duration: first, that the granting clause gives the United States the right only to "use and occupy" the property for the stated purposes; and second, that the word "term" within the warranty clause, in which the grantor warrants peaceable possession of the property "for the purposes above named for the term of this covenant," is sufficient to indicate that the parties intended that the United States'

occupancy of the property would be for a limited duration. We disagree with plaintiffs' arguments. The use of the words "use and occupy" and "term" in this deed is not the equivalent of a clear expression that the property shall revert to the grantor or that the estate will automatically terminate upon the happening of a certain event.

Plaintiffs also state that for over one hundred years, the proper construction of deeds has focused on the intent of the parties and that a narrow focus on "technical" or "magic" words is inappropriate. They argue that the language of purpose contained within the deed, coupled with the language permitting the United States to "erect such structures on the said land as the United States may see fit, and to remove any and all such structures at any time," is inconsistent with the grant of a fee simple absolute. Such language of purpose and license, the argument runs, would be surplusage if a fee simple absolute were intended; thus, it follows that the deed conveys only a determinable fee since, "[if] possible, effect must be given to every part of a deed" and "no clause, if reasonable intendment can be found, shall be construed as meaningless." *Mattox*, 280 N.C. at 476, 186 S.E.2d at 382. In making this argument, plaintiffs rely on the reasoning employed by the District Court for the Eastern District of North Carolina in *Etheridge v. United States*, 218 F. Supp. 809 (E.D.N.C. 1963). In *Etheridge*, the court attempted to apply North Carolina law in construing a deed nearly identical to the deed in this case; using a methodology of focusing on the parties' intent and giving effect to all parts of the deed, the court held that the deed conveyed a fee simple determinable. *Id.* at 811-13. This Court is not bound by decisions of a United States District Court interpreting or applying North Carolina law.

While discerning the intent of the parties is the ultimate goal in construing a deed, *Mattox*, 280 N.C. at 476, 186 S.E.2d at 382; *Carney v. Edwards*, 256 N.C. 20, 24, 122 S.E.2d 786, 788 (1961), we disagree with plaintiffs' characterization of the test, requiring express and unambiguous language of reversion or termination, as a test that relies on "rigid technicality" and ignores the intent of the parties. Under our case law the use of some express language of reversion or termination is the usual manner in which parties intending to create a fee simple determinable manifest that intent. The language of termination necessary to create a fee simple determinable need not conform to any "set formula." *Lackey*, 258 N.C. at 464, 128 S.E.2d at 809. Rather, "any words expressive of the grantor's intent that the estate

shall terminate on the occurrence of the event" or that "on the cessation of [a specified] use, the estate shall end," will be sufficient to create a fee simple determinable. *Barringer*, 242 N.C. at 317, 88 S.E.2d at 120. In this case, however, no such language or expression can be found from which the Court can conclude, without speculation and conjecture, that "it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity." N.C.G.S. § 39-1 (1984).

Accordingly, we reverse the decision of the Court of Appeals and remand to that court for further remand to the Superior Court, Dare County, for reinstatement of the judgment of the Superior Court.

REVERSED.