DONALD P. EDMUNDS, Plaintiff v. PHYLLIS M. EDMUNDS, Defendant

No. COA08-246

(Filed 16 December 2008)

**1. Judgments— default judgment—Rule 60 motion for relief—standing—original party**

The trial court erred in a declaratory judgment action seeking to quiet title by denying defendant's motion for relief based on her standing to contest the default judgment, and the portion of the trial court's order holding that defendant lacked standing to bring her motion for relief is reversed and remanded, because: (1) N.C.G.S. § 1A-1, Rule 60(b) requires that only a party to the original action may seek relief; and (2) defendant was an original party to the action.

**2. Judgments— default judgment—Rule 60 motion for relief—nonparty**

The trial court did not err in a declaratory judgment action seeking to quiet title by denying Ms. High's motion for relief from the default judgment because: (1) High was not an original party to the action as required by N.C.G.S. § 1A-1, Rule 60; and (2) High has not shown that she is entitled to any exception to Rule 60 such as being uniquely situated to function as a defendant in this case.

**3. Parties— motion to join—no interest in property**

The trial court did not err in a declaratory judgment action seeking to quiet title by denying defendant's motion to join Ms. High even though defendant claimed she had conveyed her right, title, and interest in the pertinent property to Ms. High because: (1) the plain language of the deceased's will did not support the proposition that defendant took any remainder interest in the property; (2) if the deceased had intended to alter the remainder clause which was incorporated into the will and instead leave half the remainder to defendant, he could have said so expressly in the will, and the fact that he did not strongly suggested that he intended to leave plaintiff's remainder interest intact; and (3) defendant had no interest in the property when she executed the quitclaim deeds, and thus conveyed no interest in the property to Ms. High.

**4. Appeal and Error— appealability—issue not considered by trial court appropriate for remand**

The issue of defendant's motion to join Cox as a plaintiff was not properly before the Court of Appeals, but instead is more appropriately addressed by the trial court on remand if necessary, because the trial court did not reach this issue.

Appeal by defendant from order entered 31 August 2007 by Judge Nancy C. Phillips in Columbus County District Court. Heard in the Court of Appeals 10 September 2008.

*The McGougan Law Firm, by Paul J. Ekster and Dennis T. Worley, for plaintiff-appellee.*

*Williamson, Walton & Scott, L.L.P., by Benton H. Walton, III, C. Martin Scott, II, and Thomas L. Odom, Jr., for defendant-appellant.*

CALABRIA, Judge.

This appeal arises from an order denying a motion for relief under Rules 54, 55, 58, and 60 of our Rules of Civil Procedure filed by Phyllis M. Edmunds ("defendant") and Elizabeth E. High ("Ms. High"). The trial court held that both defendant and Ms. High lacked standing to bring the motion and also denied Ms. High's motion to be joined as a defendant. For the reasons stated below, we affirm in part and reverse in part.

I. Background

On 1 August 1986, William Seymour Edmunds ("the deceased") and defendant executed a pre-marital agreement. The agreement reserved to each party the "right to dispose of any or all of [each party's] Separate Property by deed, will, or otherwise on that [party's] sole signature, without any involvement or control by the other party, and the other party hereby ratifies and consents to any such disposition." The agreement also stated, in relevant part:

The Husband further agrees that should he predecease the Wife during the marriage and while the parties are neither legally nor voluntarily separated that the Wife shall receive a life estate in the separate real property owned by the Husband as his residence in the Town of Lake Waccamaw, North Carolina. The life estate shall entitle the Wife to hold, use, and benefit from this property so long as she does not re-marryk [*sic*] and so long as she maintains

**EDMUNDS v. EDMUNDS**

[194 N.C. App. 425 (2008)]

the real property as her primary residence, pays all taxes and assessments that may becom [sic] due, keeps the residence adequately insured, and provides such maintenances [sic] to the property as may be necessary to maintain the fair market value of the property. Upon the death of the Wife, or if she should re-marry or fail to perform any of the provisions stipulated herein, the remainder interest in the aforementioned real property shall pass to Donald P. Edmunds, son of the Husband or as directed by the Husband's will.

The property in question, 1800 Lake Cove Rd., Lake Waccamaw, North Carolina ("the property"), is comprised of two and a half lots, located on the lakefront that includes a house, shed, pier, and boathouse. In 1999, the Town of Lake Waccamaw valued the property at $165,700.00.

On 22 April 1996, the deceased executed a last will and testament ("the will"), which stated, in relevant part:

**ITEM EIGHT.** I direct that my wife, Phyllis McLain Edmunds, retain a life estate in my residence located at 1800 Lake Cove Road, Lake Waccamaw, North Carolina. She shall have the exclusive use and benefit of the residence so long as she lives there on a full-time basis subject to the terms and conditions set forth in the Pre-Marital Agreement that she and I executed on August 1, 1986, said document being incorporated herein by reference.

**ITEM NINE.** I direct that all of the rest, residue, and remainder of my estate be divided equally between my wife, Phyllis McLain Edmunds, and my son, Donald P. Edmunds, by my Executor as nearly equally as possible.

The deceased died testate on 10 September 1996, survived by defendant and his son, Donald P. Edmunds ("plaintiff").

On 12 July 2000, plaintiff filed an action for quiet title and declaratory judgment. He alleged that since the deceased's death, defendant claimed the life estate in the property and "maintained possession of the house and land . . . thereby excluding Plaintiff from enjoyment and possession of his interest in said lands." He also alleged that defendant did not maintain the property as her primary residence, "failed to pay all taxes and assessments when they became due," "failed to maintain adequate insurance," and "failed to provide such maintenance to the property as is necessary to maintain the fair market value of the property." Plaintiff further alleged

EDMUNDS v. EDMUNDS

[194 N.C. App. 425 (2008)]

that plaintiff "wrongfully refused to execute a deed transferring the life estate conferred pursuant to the Pre-Marital Agreement and Last Will and Testament" of the deceased to plaintiff. Plaintiff sought the following relief:

> WHEREFORE, the Plaintiff prays judgment that the cloud of said adverse claim of the Defendant be removed from his said title to said property and that the Plaintiff be declared the owner in fee simple of said property, free from the claim of the Defendant, and for the cost of this action to be taxed by the Clerk against the Defendant. In the alternative, Plaintiff prays that the Plaintiff be declared the owner in fee simple of said property, free from the claim of the Defendant through a Declaratory Judgment action.

A copy of the summons and complaint was mailed by certified mail to defendant at her Georgia address. Defendant signed the return receipt on 24 July 2000 and plaintiff filed an affidavit of return of service. When defendant did not respond, plaintiff filed a motion for entry of default on 30 August 2000. On the same day, the Clerk of Superior Court filed an entry of default against defendant. Plaintiff then filed a motion for entry of default judgment, alleging that he was "entitled to a judgment to quiet title and for a declaratory judgment in his favor[.]" On 16 November 2000, Judge Nancy C. Phillips entered a default judgment against defendant. Judge Phillips held:

> 1. That the Defendant's life estate, right, title, and interest in the land herein described, by reason of her failure to comply with the requirements of the Pre-Nuptial Agreement and the Last Will and Testament of William Seymour Edmunds, deceased, has terminated, and that *the same is now vested in fee simple* in the Plaintiff, Donald P. Edmunds, free from any right, title, or claim, by the Defendant or on account of any person claiming under the Defendant.

> 2. That this order shall be recorded in the Office of the Register of Deeds of Columbus County, terminating the life estate of the Defendant and vesting the fee simple ownership of the property in the Plaintiff.

(Emphasis added.)

Nearly four years later, in October 2004, defendant, in two separate quitclaim deeds, conveyed all of her "right, title, claim, and interest" in the property to Ms. High. The second quitclaim deed, clarified that it was defendant's "expressed intent and desire to reaffirm and

ratify" the first quitclaim deed by this second deed in order to "confirm [her] intentions." On 21 October 2004, defendant also signed a power of attorney appointing Ms. High as her attorney in fact to "sell, convey, mortgage, lease, rent, or in any other way to manage, deal with, or dispose of" the property. "Th[e] power [was] given specifically for the purpose of acting as [defendant's] agent at any court proceedings, signing any pleadings and appearing at any hearings[.]"

Defendant explained, in the 21 October 2004 affidavit, that she "received a communication from Alan High ("Mr. High") in the middle part of September, 2004 regarding signing a quitclaim deed" for the property. Mr. High, a Columbus County attorney, is Ms. High's husband. Defendant continued,

> 4. I knew that I was coming to North Carolina this week to be with my sister-in-law who was having surgery, and I decided that I would deliver the quitclaim deed to Mr. High personally after meeting him, and I did drop in on him at his office on Monday, October 18, 2004 unannounced;

> . . . .

> 6. [A]fter meeting with Mr. High, and after recalling what kind of a person Donald P. Edmunds was and is and how he treated my husband, his adopted father, and me previously, I have recommitted that I would like for Mr. High's family to have any interest in this property that I may have, rather than see it go to Donald P. Edmunds;

> 7. I have therefore returned to his office unannounced this date and have requested that he draft any documents necessary to confirm my conveyance of my interest to Elizabeth Elkins High and to empower her to act in my place and stead regarding any lawsuit over this property or otherwise and specifically regarding File # 00 CVD 1172, Columbus County wherein Donald P. Edmunds sued me to extinguish my life estate only in the property[.]

Defendant moved for relief from the default judgment on 7 June 2005. She alleged that a copy of the default judgment was never served on her and that there was no certificate of service of the default judgment in the official court file. She argued that there was no adversity or controversy between plaintiff and defendant with respect to their remainder interests as tenants in common and that the trial court lacked jurisdiction to determine the parties' rights with

respect to their remainder interest as tenants in common. Accordingly, she asked the trial court to declare the default judgment void and set it aside.

On 7 June 2005, Defendant filed a motion, pursuant to Rule 25(d), seeking an order joining Ms. High in her action because she alleged Ms. High had acquired defendant's interest by the two quitclaim deeds. Defendant also moved to substitute Kyle A. Cox ("Cox") for plaintiff because plaintiff had conveyed his right, title, and interest in the property to Cox on or about 1 February 2007 by a non-warranty deed.

The trial court denied defendant's motion. It found as fact that defendant's claim of possessing a one-half undivided interest in the property through the residuary clause of the deceased's will was without merit; that only $1.00 in tax stamps was paid on the quit-claim deed, indicating that Ms. High paid, at most, $500.00 for the property; and that the property was worth $500,000.00 to $750,000.00. The court also made the following findings of fact to which defendant now excepts:

25. Neither Alan High nor his wife, Elizabeth High were original parties to this action and it appears to this Court that by filing the Motions in this case the defense is attempting to establish privity between Elizabeth High and Phyllis Edmunds in order to claim a one-half (½) undivided interest in the property under the residuary clause of the Will of William Seymour Edmunds.

26. It is the position of this Court that at the time that Phyllis Edmunds signed quitclaim deeds to Elizabeth High, Ms. Edmunds had no interest or rights in the subject property and it follows that she could have conveyed no interest or rights to Elizabeth or Alan High.

27. At the time that Ms. Edmunds filed the Motion for Relief under Rules 54, 55, 58 and 60 she had no interest or rights in the subject matter of this proceeding sufficient to grant standing to seek relief from the Default Judgment dated November 7, 2000.

28. At the time the Motion for Relief under Rules 54, 55, 58 and 60 was filed along with the Motion to Join Assignee as Defendant (Elizabeth High), Ms. High owned no interest in the subject matter of this proceeding sufficient to grant standing to seek relief from the Default Judgment dated November 7, 2000.

28. [*sic*] Ms. Edmunds should also be barred from bringing Motions for Relief in that even after Default Judgment was entered against her in November of 2000 and duly recorded in the Office of the Clerk of Court and the Registry of Columbus county [*sic*], she thereafter signed two quitclaim deeds to the property and further that the Petition to Partition filed by the Highs also indicates that Ms. Edmunds had no interest to the property at the filing of . said Petition.

The court also concluded as a matter of law that both defendant and Ms. High lacked standing to seek relief from the court's previous default judgment. Accordingly, the court denied defendant's motion for relief for lack of standing and denied both joinder motions. Defendant appealed the denials of all three motions.

Defendant's arguments raise the following legal issues: (1) did defendant have standing to bring a Rule 60(b) motion? (2) did Ms. High have standing to bring a Rule 60(b) motion? (3) did the trial court err by denying Ms. High's motion to be joined as a defendant? (4) did the trial court err by denying defendant's motion to join Kyle Cox as a plaintiff?

II. Defendant's Standing

[1] Defendant argues that the trial court erred by denying her motion for relief because she had standing to contest the default judgment. We agree.

Defendant sought relief under Rule 60(b)(4) and (b)(6), which allow a court to relieve a party from a final judgment if the judgment is void or for "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b) (2007). Rule 60(b) also requires that "[t]he motion shall be made within a reasonable time." *Id.* "[T]he standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006).

"In general, only a party or his legal representative has standing to request that an order be set aside under Rule 60(b); a stranger to the action may not request such relief." *Barnes v. Taylor*, 148 N.C. App. 397, 399, 559 S.E.2d 246, 248 (2002) (citation omitted). "[T]he only manner in which a non-party to an action may seek relief from an underlying judgment affecting the non-party's rights or property is to file an independent action to attack the judgment." *Watson v. Ben*

*Griffin Realty & Auction*, 128 N.C. App. 61, 63, 493 S.E.2d 331, 332 (1997) (citation omitted). However, there are exceptions.

In *Bowling v. Combs*, an estate administrator filed a wrongful death suit on behalf of the decedent and then settled the case "without either approval of a superior court judge or written consent of all persons entitled to receive damages," including the decedent's widow. 60 N.C. App. 234, 235, 298 S.E.2d 754, 755 (1983). The administrator then filed a voluntary dismissal with prejudice in the wrongful death action. *Id.* Two years later, the widow succeeded the original administrator as administratrix. *Id.* She moved to set aside the voluntary dismissal and be substituted as a party plaintiff. *Id.* The trial judge granted the widow's motion to set aside the voluntary dismissal, but did not substitute her as party plaintiff until three months later. *Id.* at 238-39, 298 S.E.2d at 757. On appeal, we explained that under these "discrete" circumstances, the widow could not "properly be regarded as a stranger to the action." *Id.* at 239, 298 S.E.2d at 757. The widow "was, by virtue of her capacity as administratrix, the only person entitled to function as plaintiff in the action[,]" and thus she was the only person who could be substituted as the party plaintiff. *Id.* at 239, 298 S.E.2d at 758. Accordingly, we held that the delay in naming the widow a party plaintiff was a mere technicality that did not provide a sufficient basis for reversal. *Id.; see also Williams v. Walker*, 185 N.C. App. 393, 397, 648 S.E.2d 536, 539 (2007) ("An intervening party thus has standing to seek relief from a judgment pursuant to Rule 60(b)." (citation omitted)).

As noted above, we have strictly construed Rule 60(b)'s requirement that only a party to the original action may seek relief. In keeping with that approach, we hold that defendant had standing to bring her Rule 60(b) motion because she was an original party to the action. Accordingly, we reverse and remand only that portion of the trial court's order holding that defendant lacked standing to bring her motion for relief.

III. Ms. High's Standing

[2] Ms. High was not an original party to the action and has not shown that she is entitled to any exception to Rule 60, such as being uniquely situated to function as a defendant in this case. Because Ms. High is a non-party, she had no standing to seek a Rule 60(b) motion for relief.

EDMUNDS v. EDMUNDS

[194 N.C. App. 425 (2008)]

IV. Joinder of Ms. High

**[3]** Defendant moved to join Ms. High as a defendant, claiming that defendant had "conveyed her right, title and interest" in the property to Ms. High. The trial court denied this motion, finding that defendant "had no interest or rights in the subject property and . . . could have conveyed no interest or rights to" Ms. High. Defendant argues that, at the time of the default judgment, she possessed a one-half interest in the property in fee simple as a tenant in common with plaintiff and conveyed that interest to Ms. High by quitclaim deed. We disagree and affirm the trial court's ruling.

The trial court read the will as devising a defeasible life estate to defendant with remainder in fee simple absolute to plaintiff. Defendant argues that the trial court erred in its construction of the will and that the will instead devised a remainder interest in fee simple to both defendant and plaintiff as tenants in common, each with a one-half undivided interest in the estate. Because the plain language of the deceased's will does not support the proposition that defendant took any remainder interest in the property, we disagree.

"It is an elementary rule in this jurisdiction that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Pittman v. Thomas*, 307 N.C. 485, 492, 299 S.E.2d 207, 211 (1983) (internal quotation omitted). In determining the testator's intention, the primary source is the language used by the testator. *Id.* Isolated clauses are not to be considered out of context, but rather the entire will is to be examined as a whole so as to ascertain the general plan of the testator. *Id.*

The deceased's will provides in Item Eight:

I direct that my wife, Phyllis McLain Edmunds, retain a life estate in my residence located at 1800 Lake Cove Road, Lake Waccamaw, North Carolina. She shall have the exclusive use and benefit of the residence so long as she lives there on a full-time basis subject to the terms and conditions set forth in the Pre-Marital Agreement that she and I executed on August 1, 1986, *said document being incorporated herein by reference.*

(Emphasis Added)

The relevant portion of the Pre-Marital Agreement provides:

The Husband further agrees that should he predecease the Wife during the marriage and while the parties are neither legally nor voluntarily separated that the Wife shall receive a life estate in the separate real property owned by the Husband as his residence in the Town of Lake Waccamaw, North Carolina . . . so long as she does not re-marryk [*sic*] and so long as she maintains the real property as her primary residence, pays all taxes and assessments that may become due, keeps the residence adequately insured, and provides such maintenances to the property as may be necessary to maintain the fair market value of the property. Upon the death of the Wife, or if she should re-marry or fail to perform any of the provisions stipulated herein, the remainder interest in the aforementioned real property shall pass to Donald P. Edmunds, son of the Husband or as directed by the Husband's will.

Defendant argues that Item Eight of the will does not dispose of the remainder interest. Defendant is mistaken. A writing incorporated by reference into a will becomes an integral part of that will, as effectively as if the writing was set out in full in the will. *Godwin v. Trust Co.*, 259 N.C. 520, 526, 131 S.E.2d 456, 460 (1963). The fact that the text of Item Eight itself does not mention plaintiff's remainder is immaterial; the Pre-Marital Agreement disposes of the remainder as if its language was copied directly into the will.

Defendant also points to the final clause of paragraph thirty-seven of the Pre-Marital Agreement, "the remainder interest in the aforementioned real property shall pass to [plaintiff] *or as directed by the Husband's will*," to support her argument that the deceased intended that the remainder pass under Item Nine of the will rather than under the remainder clause in the Pre-Marital Agreement. (emphasis added) There is nothing in the will that suggests that the testator intended to do any such thing.

Item Nine provides, "I direct that all of the rest, residue, and remainder of my estate be divided equally between my wife, Phyllis McLain Edmunds, and my son, Donald P. Edmunds. . . ." The clearest interpretation of Item Nine is that it is exactly what it appears to be, a residuary clause. There is nothing in the language of Item Nine that suggests that it was in any way intended to revoke or supplant the remainder clause which was incorporated into Item Eight. Because the remainder was already disposed of in Item Eight, it does not pass through the residuary clause.

This situation is somewhat similar to *Brown v. Brown*, 195 N.C. 315, 142 S.E. 4 (1928). In that case, the testator's original will explicitly stated that his two sons were not to take any property under the will as they had been "amply provided for" by advancements during the testator's lifetime. *Id.* at 318, 142 S.E. at 5. The testator later executed a codicil that included a residuary clause which left the remainder of the testator's estate to his "heirs at law," which happened to include the two sons. *Id.* at 319, 142 S.E. at 6. The Supreme Court held that the residuary clause in the codicil did not supercede the language of the original will, and that the sons took nothing under the will. *Id.* "If anything more was intended to be given [the sons under the codicil], the testator could have so said." *Id.* at 320, 142 S.E. at 6.

Here, too, if the deceased had intended to alter the remainder clause which was incorporated into the will and instead leave half the remainder to defendant, he could have said so expressly in the will. That he did not, strongly suggests that he intended to leave the plaintiff's remainder interest intact.

For these reasons, we agree with the trial court that defendant had no interest in the property when she executed the quitclaim deeds, and thus conveyed no interest in the property to Ms. High. We affirm the trial court's ruling denying defendant's motion to join Ms. High.

V. Joinder of Kyle Cox

[4] In dismissing plaintiff's and Ms. High's motions for relief from the default judgment for lack of standing, the trial court did not reach the issue of defendant's motion to join Cox as a plaintiff. Therefore, this issue is not properly before this Court, but instead is more appropriately addressed by the trial court on remand if necessary.

VI. Conclusion

We hold that defendant, as the original party, had standing to bring her motion for relief from the default judgment under Rule 60(b). We affirm the trial court's ruling that Ms. High, as a stranger to the original action, lacked standing to bring a motion for relief from the default judgment in her own right.

Furthermore, we affirm the trial court's ruling denying defendant's motion to join Ms. High as a defendant. We hold that, as a matter of law, defendant inherited only a defeasible life estate from the will, with plaintiff as the sole remainderman. She was divested of this

life estate when she failed to fulfill the conditions set forth in the premarital agreement. This defeasance occurred automatically and without further judicial action upon her failure to meet those conditions. At this time, plaintiff's remainder interest became possessory and he became the sole tenant in fee simple absolute. Having no further interest in the property, defendant conveyed no interest to Ms. High when she executed the quitclaim deed. Based upon the record before us, Cox is the sole owner of the property in fee simple absolute. Ms. High owns no interest in the property, and therefore we hold that defendant's motion for her joinder was properly denied.

Therefore, we affirm the trial court's order with the exception of that portion of the order holding that defendant lacked standing. We reverse that portion of the trial court's order holding that defendant lacked standing and remand for reconsideration consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judge TYSON concurs.

Judge ELMORE dissents by a separate opinion.

ELMORE, Judge, concurring in part and dissenting in part.

For the reasons stated below, I respectfully dissent from that part of the majority opinion holding that the trial court properly denied defendant's motion to join Elizabeth High as a necessary party.

Defendant moved to join Elizabeth High as a defendant pursuant to Rule 25(d) because plaintiff had conveyed her right, title, and interest in the property to Elizabeth High by quitclaim deeds. The trial court denied defendant's joinder motion in its 31 August 2007 order. This decree is supported by the following challenged findings of fact:

15. The Defendant herein, Ms. Edmunds, contends through counsel that she still maintains an ownership interest in the subject property by and through the residuary clause of the Will of William Seymour Edmunds, such interest being a one-half (½) undivided interest along with Donald P. Edmunds, the son of the testator, which this Court finds to be without merit.

26. It is the position of this Court that at the time that Phyllis Edmunds signed quitclaim deeds to Elizabeth High, Ms. Edmunds

had no interest or rights in the subject property and it follows that she could have conveyed no interest or rights to Elizabeth or Alan High.

28. At the time the . . . Motion to Join Assignee as Defendant (Elizabeth High) [was filed], Ms. High owned no interest in the subject matter of this proceeding sufficient to grant standing to seek relief from the Default Judgment dated November 7, 2000.

Defendant argues that "at the time of the default judgment, [she] owned a one-half (½) undivided interest as a tenant in common and continued to own that interest until [she] deeded it to Elizabeth High."

I would agree with defendant that the trial court misinterpreted the will and pre-marital agreement. The trial court read the will as granting to defendant a life estate in the property and granting to plaintiff the entire remainder. I do not believe that this reading is consistent with the plain language of the will.

"The intent of the testator is the polar star that must guide the courts in the interpretation of a will." *Coppedge v. Coppedge*, 234 N.C. 173, 174, 66 S.E.2d 777, 778 (1951) (citations omitted). "The court looks at every provision of the will, weighing each statement, and gathering the testator's intent from the four corners of the instrument." *Hammer v. Hammer*, 179 N.C. App. 408, 410, 633 S.E.2d 878, 881 (2006) (citing *Holland v. Smith*, 224 N.C. 255, 257, 29 S.E.2d 888, 889-90 (1944)). In this case, we look to Items Eight and Nine of the will and paragraphs twenty-three and thirty-seven of the pre-marital agreement to determine the testator's intent as to the property's disposition.

William Edmunds's will, executed fewer than four months before his death, clearly devised to defendant a life estate in the property "subject to the terms and conditions set forth in the Pre-Marital Agreement . . . ." Those terms, located in paragraph thirty-seven of the pre-marital agreement, entitled defendant "to hold, use, and benefit" from the property so long as she met five conditions. If defendant should fail to perform any of those conditions, "the remainder interest in the aforementioned real property shall pass to [plaintiff] . . . *or as directed by the Husband's will*." When Edmunds drafted the pre-marital agreement, he left open the possibility that someone other than plaintiff could receive the remainder interest in the property through his will by including those last seven words. Paragraph 23 of

the pre-marital agreement specifies that Edmunds had the "right to dispose of any or all of [his] Separate Property by deed, *will*, or otherwise on [his] sole signature . . . ." (Emphasis added.) Edmunds was free to specify a different recipient of the remainder interest in the property in his will; I believe that Item Eight of the will so specifies.

Item Eight of the will only gives defendant a life estate; like the pre-marital agreement, it does not dispose of the remainder. It incorporates paragraph 37 of the pre-marital agreement, but as stated above, paragraph 37 leaves open the possibility that Edmunds could dispose of the remainder differently in his will. The will's residuary clause, Item Nine, states that "all of the rest, residue, and remainder of [Edmunds's] estate be divided equally between" defendant and plaintiff. Edmunds divided the property into two separate interests— the life estate and the remainder—but specifically bequeathed only the life estate; the remainder passed into his residuary and, under Item Nine, should have been divided equally between plaintiff and defendant.

Plaintiff argues that such a division is nonsensical; his father could not have intended to give a one-half remainder interest in the property to defendant after she failed to maintain her life estate. Several reasons belie this argument: First, the will's plain language supports sweeps the remainder into the residuary clause. Second, the pre-marital agreement provided that defendant would lose her life estate if she failed to meet Edmunds's conditions *or upon her death*, meaning that the life estate's expiration was not solely dependent upon her lack of care. Third, defendant had exclusive use of the property while she held her life estate, but would become tenants in common with plaintiff after her life estate expired; such an arrangement would be appropriate if defendant chose to use the lake house only as a vacation home because plaintiff also would have access to the property as a vacation home. And, finally, our Supreme Court has previously recognized a similar bequest. In *Lee v. Lee*, our Supreme Court interpreted a will that devised a life estate to the testators' cousin. 216 N.C. 349, 349, 4 S.E.2d 880, 881 (1939). The will's residuary clause provided that all of the estate's residue would also pass to the testators' cousin. *Id.* at 350, 4 S.E.2d at 881. The Court held that the will perfected title in the cousin because "he took only a life estate by Item 2, [and] the remainder passed to him by the inclusive terms of the residuary clause in Item 9." *Id.* In *Lee*, the will's simultaneous separation of the life estate interest from the remainder interest and bequest of the separate interests to the same person did not render the residuary

**IN RE J.W.S.**

[194 N.C. App. 439 (2008)]

clause void. Instead, the Court deemed the remainder interest to pass through the residuary clause to the designated recipient, the testators' cousin. Because he also owned the life estate, his interests united. Here, as in *Lee*, defendant received a life estate *as well as* a remainder interest. Unlike the cousin in *Lee*, however, defendant shared her remainder interest with plaintiff, and, thus, her life estate and remainder interest did not become united into a fee simple. Nevertheless, contrary to the trial court's findings of fact, defendant acquired a one-half remainder interest in the property under Edmunds's will.

The trial court's findings that defendant had no interest to transfer to Elizabeth High are, therefore, also unfounded. The default judgment could not strip defendant of her remainder interest, and, thus, she still had an interest to convey to Elizabeth High. *See Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 440, 527 S.E.2d 40, 44 (2000) (holding that with respect to default judgments, "[a]n adjudication that extinguishes property rights without giving the property owner an opportunity to be heard cannot yield a 'valid judgment' "). Accordingly, if the trial court were to grant defendant's motion for relief from the default judgment, Elizabeth High would become tenants in common with Kyle Cox. She is a necessary party who should have been joined as a defendant. Accordingly, I would hold that the trial court erred by denying defendant's motion to so join her.