CHARLENE NELSON, Executrix of the ESTATE OF LUCILLE VIRGINIA JONES, Plaintiff v. GERRY BENNETT, INEZ HAGAMAN, LYNDA FREJLACH, BRIAN EANES, STACEY EANES ANGSTADT, WILLIAM HOLT, and DELORES HOLT, Defendants

No. COA09-896

(Filed 15 June 2010)

**1. Appeal and Error— interlocutory order and appeal—Rule 54(b) certification**

Although the trial court's order did not resolve all of the issues raised by an estate's request for declaratory relief, the Court of Appeals had jurisdiction based on the trial court's certification of this case for immediate appellate review under N.C.G.S. § 1A-1, Rule 54(b).

**2. Wills— declaratory judgment—life estate—termination upon occurrence of one or more events**

The trial court erred in a declaratory judgment action by construing Item II.B.6 of decedent's will to provide that Ms. Frejlach's life estate terminated if she used the pertinent house or property for business purposes, as a bed and breakfast, or if she leased the house or property. However, the trial court did not err by concluding that Ms. Frejlach's life estate was subject to termination in the event that she did not reside in the house or ceased to reside in the house on the property.

Judge ROBERT N. HUNTER, JR., concurring in part and dissenting in part.

Appeal by Defendant Lynda Frejlach from order entered 31 March 2009 by Judge Allen Baddour in Chatham County Superior Court. Heard in the Court of Appeals 19 November 2009.

**NELSON v. BENNETT**

[204 N.C. App. 467 (2010)]

*Law Office of Michael W. Patrick, by Michael W. Patrick, for defendant-appellant Lynda Frejlach.*

*Burns, Day & Presnell, P.A., by Lacy M. Presnell, III, and James J. Mills, for defendant-appellee Inez Hagaman.*

ERVIN, Judge.

Defendant Lynda Frejlach appeals from an order entered by the trial court construing the will of Lucille Virginia Jones to provide that Ms. Jones' will granted Ms. Frejlach a life estate in a house and eleven acres of real property located in Chatham County that was terminable upon the occurrence of certain triggering events. After careful consideration of the arguments advanced in the parties' briefs in light of the record and the applicable law, we affirm in part and reverse in part.

## I. Factual Background

### A. Substantive Facts

Ms. Jones died testate on 18 February 2008. Her last will and testament was dated 2 September 1998. Prior to her death, Ms. Jones owned a house and eleven acres of land located at 493 Gardner Road in Apex, North Carolina. Ms. Frejlach lived in the Gardner Road residence with Ms. Jones and assisted Ms. Jones with the design and construction of the Gardner Road residence. Ms. Frejlach alleges that, during this interval, she acquired numerous items of personal property which she stored at the Gardner Road residence based on her understanding that she would inherit the house at some point in the future. In addition, Ms. Frejlach asserts that Ms. Jones told her on numerous occasions that the residence would be left to her following Ms. Jones' death. In approximately 1997 or 1998, Ms. Frejlach left the Gardner Road residence and moved to Illinois.

After her death, Ms. Jones' will was admitted to probate. Item II. B.6 of Ms. Jones' will provided that:

I give the right for life to Lynda Frejlach to live in the house located on the 11 acres of property I own at 493 Gardner Road, Apex, NC, 27502. At her death or if Lynda Frejlach declines to exercise this right, I give this 11 acres of property to my sister, Inez [Hagaman]. This right is only for Lynda Frejlach to live in the house. The house is not to be used for a business or Bed and Breakfast and is not to be leased out by Lynda Frejlach. As indicated earlier, the personal property within the house which I cur-

rently own will belong to my sister, Inez [Hagaman], and should not be sold or disposed of by Lynda Frejlach.

As of 27 October 2008, Ms. Frejlach had not occupied the Gardner Road residence. According to Ms. Frejlach, the Gardner Road residence was in "a state of extreme clutter and disorder" at the time of Ms. Jones' death, a situation which made it difficult for Ms. Frejlach to locate and remove all of the items of her personal property which she left in the house at the time of her departure for Illinois and which rendered the house "not fit to live in at present." In addition, Ms. Frejlach contended that she "could not occupy the Gardner Road residence until many items of [Ms. Jones'] personal property—to which [she] has no claim—are removed from the residence."

### B. Procedural Facts

On 27 October 2008, Charlene Nelson, as Executrix of Ms. Jones' estate, filed a declaratory judgment action in the Superior Court of Chatham County against Gerry Bennett, Ms. Hagaman, Ms. Frejlach, Brian Eanes, Stacey Eanes Angstadt, William Holt, and Delores Holt seeking, among other things, a determination of whether Ms. Frejlach had a license, rather than a life estate, in the Gardner Road property and whether Ms. Frejlach had implicitly renounced her right to live there. On 24 December 2008, Ms. Frejlach filed an answer and cross-claim in which she asked the court to declare that Ms. Jones' will had granted her a life estate in the Gardner Road property and that she had not renounced her interest in the property in question. On 23 January 2009, Ms. Hagaman filed an answer in which she asserted that Ms. Jones' will devised a defeasible life estate in the Gardner Road property to Ms. Frejlach and that Ms. Frejlach had declined to accept this life estate, effectively making Ms. Hagaman the owner of the Gardner Road property.

On 26 March 2009, the trial court entered an order interpreting Ms. Jones' will to devise Ms. Frejlach a defeasible life estate in the Gardner Road property, with this life estate terminable in the event that Ms. Frejlach (1) expressly declined the life estate in writing;[1] (2)

---

1. On 24 February 2009, Ms. Frejlach filed a formal written acceptance of the life estate, while "respectfully request[ing] the Executor of the Estate to notify the undersigned when the personal property of [Ms.] Jones that has been left to other persons has been removed from that residence so that the residence is liveable and could be occupied by" Ms. Frejlach. As a result, any issue that may have otherwise arisen from the trial court's conclusion that Ms. Frejlach's tenancy would terminate in the event that she "decline[d] the life estate expressly in writing" is moot and need not be addressed on appeal.

NELSON v. BENNETT

[204 N.C. App. 467 (2010)]

failed to reside in the Gardner Road residence beginning on or before 27 April 2009; (3) used the Gardner Road house or property for business purposes or as a bed and breakfast inn; (4) leased the house or property; or (5) ceased to reside in the Gardner Road residence. In its order, the trial court certified the issue of the proper interpretation of Item II.B.6 of Ms. Jones' will for immediate appellate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Ms. Frejlach gave notice of appeal to this Court from the trial court's order on 27 April 2009.

## II.  Legal Analysis

### A.  Jurisdiction

**[1]** The trial court's order did not resolve all of the issues raised by the estate's request for declaratory relief and is, for that reason, not a final decision. The Court of Appeals has jurisdiction over appeals from orders that represent a final judgment as to one or more, but not all, of the claims or parties involved in a particular civil action and the trial court certifies, as it has done in this instance, that there is no just reason for delay. N.C. Gen. Stat. § 1A-1, Rule 54(b); see *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 507 S.E.2d 56 (1998). The trial court's order finally disposes of the claims involving Ms. Frejlach's interest in the Gardner Road property. As a result, this Court has jurisdiction over Ms. Frejlach's challenge to the trial court's order.

### B.  Standard of Review

"The Declaratory Judgment Act, [N.C. Gen. Stat. §] 1-253 *et seq.*, affords an appropriate procedure for alleviating uncertainty in the interpretation of written instruments. . . ." *Hejl v. Hood, Hargett & Associates, Inc.*, — N.C. App. —, —, 674 S.E.2d 425, 427 (2009) (citation omitted). " 'The standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence. Where the findings are supported by competent evidence, the trial court's findings of fact are conclusive on appeal.' " *Cross v. Capital Transaction Grp., Inc.*, 191 N.C. App. 115, 117, 661 S.E.2d 778, 780 (2008) (citation omitted), *disc. review denied*, 363 N.C. 124, 672 S.E.2d 687 (2009). " 'However, the trial court's conclusions of law are reviewable *de novo*.' " *Id.* (quoting *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000). As a result of the fact that there are no factual disputes between the parties, the ultimate issue that we must resolve is the appropriate construction of Item II.B.6 of Ms. Jones' will.

## C.  Construction of Ms. Jones' Will

**[2]**  "An estate in fee simple determinable is created by a limitation in a fee simple conveyance which provides that the estate shall automatically expire upon the occurrence of a certain subsequent event." *Station Assoc., Inc. v. Dare County*, 350 N.C. 367, 370, 513 S.E.2d 789, 792 (1999) (citing *Elmore v. Austin*, 232 N.C. 13, 20-21, 59 S.E.2d 205, 211 (1950). "Like a fee, a life estate may be defeasible if its continued existence is conditional." *Brinkley v. Day*, 88 N.C. App. 101, 106, 362 S.E.2d 587, 590 (1987) (citing *Blackwood v. Blackwood*, 237 N.C. 726, 76 S.E.2d 122 (1953)). "The law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is clearly manifested." *Washington City Board of Education v. Edgerton*, 244 N.C. 576, 578, 94 S.E.2d 661, 664, (1956). For that reason, the Supreme Court "has declined to recognize reversionary interests in deeds that do not contain express and unambiguous language of reversion or termination upon condition broken" and has "stated repeatedly that a mere expression of the purpose for which the property is to be used without provision for forfeiture or reentry is insufficient to create an estate on condition . . . ." *Station Assoc.*, 350 N.C. at 370, 371, 513 S.E.2d at 792, 793. However, "in those cases in which the deed contained express and unambiguous language of reversion or termination, we have construed a deed to convey a determinable fee or fee on condition subsequent." *Id.*, 350 N.C. at 371-72, 513 S.E.2d at 793. "The language of termination necessary to create a fee simple determinable need not conform to any 'set formula' " as long as " 'any words expressive of the grantor's intent that the estate shall terminate on the occurrence of the event' or that 'on the cessation of [a specified] use, the estate shall end,' " are used. *Id.*, 350 N.C. at 373-74, 513 S.E.2d at 794 (quoting *Lackey v. Hamlet City Board of Education*, 258 N.C. 460, 464, 128 S.E.2d 806, 809 (1963), and *Charlotte Park and Recreation Commission v. Barringer*, 242 N.C. 311, 317, 88 S.E.2d 114, 120 (1955), *cert. denied sub nom.*, 350 U.S. 983, 100 L. Ed. 851 (1956). As a result, the fundamental question that we must resolve in construing Item II.B.6 of Ms. Jones' will is determining whether it clearly expresses an intent that the life estate granted to Ms. Frejlach would automatically terminate upon the occurrence of one or more of the events described there.

It is an elementary rule . . . that the intention of the testat[rix] is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates

some rule of law, or is contrary to public policy. In determining the testat[rix]'s intention, the primary source is the language used by the testat[rix]. Isolated clauses are not to be considered out of context, but rather the entire will is to be examined as a whole so as to ascertain the general plan of the testat[rix].

*Edmunds v. Edmunds*, 194 N.C. App. 425, 433 669 S.E.2d 874, 879 (2008), *aff'd per curiam*, 363 N.C. 740, 686 S.E.2d 150 (2009) (quoting *Pittman v. Thomas*, 307 N.C. 485, 492, 299 S.E.2d 207, 211 (1983) (internal quotations omitted)). " 'The intent of the testat[rix] must be gathered from the four corners of the will and the circumstances attending its execution.' " *Ward v. Ward*, 88 N.C. App. 267, 269, 362 S.E.2d 847, 849 (1987), *disc. review denied*, 322 N.C. 115, 367 S.E.2d 921 (1988) (citation omitted). When interpreting a will, "every word and clause must, if possible, be given effect and apparent conflicts reconciled." *Slater v. Lineberry*, 89 N.C. App. 558, 559, 366 S.E.2d 608, 610 (1988).

A careful analysis of the language of Item II.B.6 of Ms. Jones' will discloses that those portions of the will providing that "[t]he house is not to be used for a business or Bed and Breakfast and is not to be leased out by [Ms.] Frejlach" are unaccompanied by any "express and unambiguous language of reversion or termination upon condition broken," *Station Assoc.*, 350 N.C. at 370, 513 S.E.2d at 793, and amount to "a mere expression of the purpose for which the property is to be used without provision for forfeiture or reentry." *Id.* at 371, 513 S.E.2d at 793. We are particularly persuaded of the correctness of this conclusion given the Supreme Court's clear statement that the creation of defeasible interests is disfavored.[2] As a result, we conclude that the trial court erred by construing Item II.B.6 to provide that Ms. Frejlach's life estate[3] terminates if she "uses the house or

---

2. Although Ms. Hagaman argues that what we agree is clearly reversionary language applicable to that portion of Item II.B.6 of Ms. Jones' will requiring Ms. Frejlach to live on the Gardner Road property should be deemed applicable to the provisions of Item II.B.6 concerning the leasing and business-related use of the property, we are simply not persuaded by that argument. The only portion of Item II.B.6 to which the reversionary language in question appears to relate is the language which requires Ms. Frejlach to live on the property, and we believe that it would be inconsistent with the Supreme Court's insistence that such language be "express and unambiguous," *Station Assoc.*, 350 N.C. at 370, 513 S.E.2d at 792, for the Court to treat that reversionary language as applicable throughout Item II.B.6.

3. Although one of the questions about which Ms. Jones' estate originally sought the trial court's guidance was whether Item II.B.6 of Ms. Jones' will granted Ms. Frejlach a license or a life estate, no party to this appeal has challenged the trial court's determination that the relevant provision of Ms. Jones' will granted Ms. Frejlach a life estate in the Gardner Road property.

**NELSON v. BENNETT**

[204 N.C. App. 467 (2010)]

property for business purposes or as a bed and breakfast" or if she "leases the house or property."

On the other hand, the language providing that Ms. Jones "give[s] the right for life to [Ms.] Frejlach to live in the house" located on Gardner Road and that, "if [Ms.] Frejlach declines to exercise this right, I give this 11 acres of property to" Ms. Hagaman is not merely precatory.[4] We are unable to understand the "right" to be "exercised" as anything other than Ms. Frejlach's right to live on the Gardner Road property. Although this portion of Item II.B.6 lacks some of the language that is frequently found in instruments creating defeasible interests, such as "so long as" or "on the condition that," the relevant provisions of Item II.B.6 do clearly state that, in the event that Ms. Frejlach does not "exercise this right" to live on the property, it goes to Ms. Hagaman. As a result, we are unable to avoid the conclusion that Item II.B.6 of Ms. Jones' will does grant Ms. Frejlach a life estate in the Gardner Road property that is subject to termination in the event that she chooses not to live there.

Our dissenting colleague rejects this reading of Item II.B.6 of Ms. Jones' will on the grounds that, "[r]eading the devise in the sequence transcribed by the testatrix, it appears that Ms. Jones' intent was merely to devise appellant Frejlach a life estate in which the testatrix desired her to live in the house" and that, "[a]t best, the devise to appellant in item II, paragraph (B)(6) would be defeasible only upon appellant Frejlach's death or her declining to exercise her right to the devised property, at which point the property would vest in appellee Hagaman." As a result, the dissent concludes that "this language would essentially create a 'plain vanilla' life estate, because any life estate devised is only defeasible upon the death of the life tenant or upon a devisee's decision to renounce the estate.[5]" We are not per-

---

4. The dissent claims to be unable to distinguish between the language used with respect to the portions of Item II.B.6 relating to the use of the Gardner Road property as a business or a bed and breakfast or the leasing of the Gardner Road property, on the one hand, and the portion of Item II.B.6 relating to the requirement that Ms. Frejlach live on the Gardner Road property, on the other. However, as we have already noted, there is no language such as the provision that the Gardner Road property will be given to Ms. Hagaman in the event that Ms. Frejlach dies or "declines to exercise this right" in that portion of Item II.B.6 relating to the leasing of the property or its use for business or bed and breakfast purposes. Thus, contrary to the argument advanced in the dissent, we believe that the language used in Item II.B.6 with respect to the requirement that Ms. Frejlach live on the Gardner Road property is, in fact, different from the language that we have concluded is, in fact, precatory in nature.

5. In reaching this conclusion, the dissent equates a failure to exercise the right to live on the property with a formal renunciation of the interest granted by Item II.B.6

suaded by this logic because it fails to give sufficient effect to Ms. Jones' very specific and repeated use of the word "live." As used in this context, "live" means "to make one's dwelling; reside." *Webster's New World Dictionary of the American Language*, 857 (1957). We believe that, under the canons of construction discussed above, we must assume that Ms. Jones chose her words carefully and intended to use the language that she used. In the event that one accepts the logic of our dissenting colleague, Ms. Frejlach could retain a life estate in the Gardner Road property without ever setting foot on the premises, a result which we have difficulty squaring with Ms. Jones' explicit statement that she gave Ms. Frejlach the right "to live in the house" located on Gardner Road "for life" and that, if Ms. Frejlach "declines to exercise this right, I give this 11 acres of property to" Ms. Hagaman.[6] Thus, since the logic adopted by our dissenting colleague does not give effect to what we believe to be Ms. Jones' clear intention to divest Ms. Frejlach of her life estate in the event that she failed to live on the Gardner Road property, we do not find the approach taken in the dissent persuasive.[7]

---

of Ms. Jones' will of the type contemplated in N.C. Gen. Stat. § 31B-2. The dissent does not provide any justification for treating a failure to "exercise this right" and a formal renunciation as one and the same thing. After a careful study of Item II.B.6, we believe that the reference to "declin[ing] to exercise this right" should be understood as a reference to a failure on Ms. Frejlach's part to live on the Gardner Road property rather than to a formal renunciation of the life estate, with this conclusion based on the fact that the language of Item II.B.6 makes no reference to a formal renunciation and the fact that the relevant language indicates a clear intent on the part of Ms. Jones that Ms. Frejlach actually occupy the property. Furthermore, as long as any business or bed and breakfast use that Ms. Frejlach might make of the property or any lease that Ms. Frejlach might enter into with respect to the property does not prevent her from living there, such activities would not, as we read Item II.B.6, operate to terminate her interest in the Gardner Road property.

6. The dissent argues that it is not clear what Ms. Frejlach would have to do in order to comply with the requirement that she "live" on the Gardner Road property and that this lack of clarity militates against a reading of Item II.B.6 that would require her to live on the property at the risk of losing her interest. Although we recognize that issues of fact might arise in the future as the result of Ms. Jones' choice of language, we do not believe that the potential that such issues might arise, in and of itself, introduces such uncertainty into Ms. Frejlach's life estate as to defeat the creation of a defeasible interest under the logic of *Brinn v. Brinn* 213 N.C. 282, 287, 195 S.E. 793, 796 (1938).

7. It is not clear to the Court whether Ms. Frejlach sought or obtained a stay of that portion of the trial court's order requiring her to take up residence on the Gardner Road property on or before 27 April 2009. We do not, however, believe that we need to concern ourselves with the appropriateness of the trial court's determination that Ms. Frejlach must occupy the Gardner Road residence by that date, since Ms. Frejlach has not assigned that portion of the trial court's order as error on appeal. N.C.R. App. P. 10(a).

Thus, for the reasons set forth above, we conclude that the trial court erred by finding that Item II.B.6 of Ms. Jones' will gave Ms. Frejlach a life estate in the Gardner Road property that terminated in the event that she "use[d] the house or property for business purposes or as a bed and breakfast" or if she "lease[d] the house or property." On the other hand, we conclude that the trial court correctly determined that Ms. Frejlach's life estate was subject to termination in the event that she did not "reside in the house" or "cease[d] to reside in the house on the property . . . ." As a result, for the reasons set forth above, the trial court's order is affirmed in part and reversed in part.

AFFIRMED IN PART AND REVERSED IN PART.

Judge STROUD concurs.

Judge ROBERT N. HUNTER, JR., concurs in part and dissents in part in separate opinion.

HUNTER, JR., Robert N., Judge, concurring in part and dissenting in part.

Although I agree with my colleagues that the language suggesting that Ms. Frejlach may not use the home as a business is precatory, our opinions differ with regard to whether Ms. Frejlach is required to live in the devised home as a condition subsequent. After reviewing the language of Item II(B)(6), I do not find a significant distinction between the language of desire that Ms. Frejlach not use the home as a business and the language desiring that Ms. Frejlach live on the premises. The majority opinion does not provide such a distinction.

For instance, the pertinent language in dispute provides: "I give the right for life to Lynda Frejlach to live in the house located on the 11 acres of property I own . . . . At her death or if Lynda Frejlach declines to exercise this right, I give this 11 acres of property to my sister, Inez Hageman." This devise does not contain definite language of reversion or re-entry based on a condition that Ms. Frejlach live in the home, but rather provides for clear and definite events of defeasance *only* in the event of death or renunciation. With regard to this language, N.C. Gen. Stat. § 31B-2 (2009) provides a methodology for renouncing or declining a devise, and the death of the tenant always results in the end of a life estate. Thus, the testator's own words would lose their meaning if the majority's interpretation of the will is employed.

When interpreting a will, "every word and clause must, if possible, be given effect and apparent conflicts reconciled." *Slater v. Lineberry*, 89 N.C. App. 558, 559, 366 S.E.2d 608, 610 (1988). It has been long held that " '[o]rdinarily a clause in [an instrument] will not be construed as a condition subsequent, unless it contains language sufficient to qualify the estate conveyed and provides that in case of a breach the estate will be defeated, and this must appear in appropriate language sufficiently clear to indicate that this was the intent of the parties.' " *Station Assoc. Inc. v. Dare County*, 350 N.C. 367, 370, 513 S.E.2d 789, 792 (1999) (quoting *Ange v. Ange*, 235 N.C. 506, 508, 71 S.E.2d 19, 20 (1952); *see also Church v. Refining Co.*, 200 N.C. 469, 473, 157 S.E. 438, 440 (1931); *Braddy v. Elliott*, 146 N.C. 578, 580-81, 60 S.E. 507, 508 (1908).

A condition subsequent will not be recognized unless the language of the instrument contains "express and unambiguous language of reversion or termination upon condition broken." *Station Assoc.*, 350 N.C. at 370, 513 S.E.2d at 792. In *Station Assoc.*, the Court notes a plethora of cases which support the aforementioned proposition:

> *Washington City*, 244 N.C. at 577, 578, 94 S.E.2d at 662, 663 (habendum clause contained expression of intended purpose— "for school purposes"; held fee simple because no power of termination or right of reentry was expressed); *Ange*, 235 N.C. at 508, 71 S.E.2d at 20 (habendum clause contained the language "for church purposes only"; nevertheless held to be an indefeasible fee since there was "no language which provides for a reversion of the property to the grantors or any other person in case it ceases to be used as church property"); *Shaw Univ. v. Durham Life Ins. Co.*, 230 N.C. 526, 529-30, 53 S.E.2d 656, 658 (1949) (property and the proceeds therefrom were to be "perpetually devoted to educational purposes"; held fee simple absolute since there was "nothing in the . . . deed to indicate the grantor intended to convey a conditional estate," and there was "no clause of re-entry, no limitation over or other provision which was to become effective upon condition broken"); *Lassiter v. Jones*, 215 N.C. 298, 300-01, 1 S.E.2d 845, 846 (1939) (deed conveyed property "for the exclusive use of the Polenta Male and Female Academy; it shall be used exclusively for school purposes"; held to have conveyed a fee simple "for the reason that nowhere in the deed is there a reverter or reentry clause"); *First Presbyterian*, 200 N.C. at 470-71, 473, 157 S.E. at 438-39, 440

(habendum clause indicated that the property was to be used for church purposes only; held to be an indefeasible fee simple, notwithstanding the language in the habendum clause, since there was "no language showing an intent that the property shall revert to the grantor . . . or that the grantor . . . shall have the right to reenter."); *Hall v. Quinn*, 190 N.C. 326, 328-29, 130 S.E. 18, 19-20 (1925) (granting clause and habendum clause both indicated that the property was "to be used for the purposes of education" only; held to be an estate in fee simple because there was "no clause of re-entry; no forfeiture of the estate upon condition broken"); *Braddy*, 146 N.C. at 580-81, 60 S.E. at 508 (recitals that the grantor was to improve the property did not create an estate upon condition since there was an absence of an express reservation in the deed of a right of reentry).

*Id.* at 370-71, 513 S.E.2d at 792-93. On the other hand, the Court also provided that an estate has been recognized by courts as defeasible or subject to condition subsequent where the habendum clause "contain[s] express and unambiguous language of reversion or termination . . . ." *Id.* at 371, 513 S.E.2d at 793. The following cases were recognized by the Court in support:

*Mattox v. State*, 280 N.C. 471, 472, 186 S.E.2d 378, 380 (1972) (habendum clause contained condition that if the grantee failed to continuously and perpetually use the property as a Highway Patrol Radio Station and Patrol Headquarters, the land "shall revert to, and title shall vest in the Grantor"); *City of Charlotte v. Charlotte Park & Rec. Comm'n*, 278 N.C. 26, 28, 178 S.E.2d 601, 603 (1971) (habendum clause contained language that "upon condition that whenever the said property shall cease to be used as a park . . . , then the same shall revert to the party of the first part"); *Lackey v. Hamlet City Bd. of Educ.*, 258 N.C. 460, 461, 128 S.E.2d 806, 807 (1963) (deed contained paragraph providing, "It is also made a part of this deed that in the event of the school's disabandonment (failure) . . . this lot of land shall revert to the original owners"); *Charlotte Park & Rec. Comm'n v. Barringer*, 242 N.C. 311, 313, 88 S.E.2d 114, 117 (1955) (deed indicated that in the event the lands were not used solely for parks and playgrounds, the "said lands shall revert in fee simple to the undersigned donors"), *cert. denied*, 350 U.S. 983, 100 L. Ed. 851 (1956); *Pugh v. Allen*, 179 N.C. 307, 308, 102 S.E. 394, 394 (1920) (deed contained provision that "in case the said James H. Pugh should die without an heir the following gift shall revert to the sole use and

benefit of my son"); *Smith v. Parks,* 176 N.C. 406, 407, 97 S.E. 209, 209 (1918) (deed indicated that "should [grantor] die without leaving such heir or heirs, then the same is to revert back to her nearest kin"); *Methodist Protestant Church of Henderson v. Young,* 130 N.C. 8, 8-9, 40 S.E. 691, 691 (1902) (deed expressed that if the church shall "discontinue the occupancy of said lot in manner as aforesaid, then this deed shall be null and void and the said lot or parcel of ground shall revert to [the grantor]").

*Id.* at 372, 513 S.E.2d at 793.

Applying the aforementioned case law to the present case, the testatrix's use of the words "live in the house" and the statement that the house is not to be used for certain purposes are not clear expressions that the property shall revert to the grantor or that the estate will automatically terminate upon the happening of those stated events. Standing alone these provisions are "precatory"[8] and therefore not recognized as valid to create conditions subsequent by our Court, and considered mere surplusage, without effect. *See id.* at 370, 513 S.E.2d at 792-93.

The problem presented by precatory words is not new and has been employed in an endless variety of legal disputes. *Brinn v. Brinn,* 213 N.C. 282, 287, 195 S.E. 793, 796 (1938) suggests the following method of analysis:

Where, however, a limited estate is devised to the first taker, words of recommendation, request, entreaty, wish, or expectation addressed to the legatee or devisee will ordinarily make the first taker a trustee for the person or persons in whose favor such expressions are used, provided the testator has pointed out with sufficient clearness and certainty both the subject matter and the objects of the intended trust. Such words of recommendation or request when used in direct reference to the estate are held to be *prima facie* testamentary and imperative and not precatory. When accompanying a limited gift or bequest, words of request or desire or recommendation that a particular application be made of such bequest will be deemed to impose a trust upon these conditions: (a) That they are so used to exclude all option or discretion in the party who is to act, as to his acting according to them

---

8. Precatory words are those which express a request or wish rather than a positive command. In the absence of a contrary intention manifested by the testator in the will, precatory words will not be made imperative. 1 WIGGINS, WILLS AND ADMINISTRATION OF ESTATES IN NORTH CAROLINA § 12.6 (4th ed. 2005).

**NELSON v. BENNETT**

[204 N.C. App. 467 (2010)]

or not; (b) the subject is certain; and (c) the objects expressed are not too vague or indefinite to be enforced. This is particularly true when those in behalf of whom the requests are made are natural objects of the bounty of the testator and no other disposition of the remainder of the estate after the limited estate is made.

*Id.* (citations omitted).

Using this analysis, a directive that the life tenant must "live" on the property is simply too vague and indefinite to be enforced. When does someone "live" on the property. Must it be her domicile? Must she register to vote there? Can she "live" in more than one place at the same time? If she lists the property for taxes or cuts standing timber, is she living on the property? The majority's decision would seem to allow Ms. Frejlach the ability to rent the property or use it for a business and that these terms would not cause a reversion. In my opinion, the drafter of the will and the testatrix intended "living" and the incidents of "life estate" as identical in meaning and effect.

As the law does not favor restrictions on the title to land unless clearly manifested in the instrument, pursuant to long held precedent, this language should be construed to provide that Inez Hagaman has a remainder, fee simple absolute interest in the home at Ms. Frejlach's death or if Ms. Frejlach declines to accept the devise, at which point her interest in the home would lapse and vest in Ms. Hagaman. *See Board of Education v. Edgerton*, 244 N.C. 576, 94 S.E.2d 661, 664 (1956) (stating that the law does not favor restrictions on the title to land; therefore, the intention of the party to create a condition subsequent must be clearly manifested through the language of the instrument).

Finally, our Courts presume that the person drafting the will, whether an attorney or layman, knows the law and will apply the law correctly while drafting the will. *Austin v. Austin*, 160 N.C. 367, 368, 76 S.E. 272, 272 (1912). This will was clearly drafted by an attorney who would know how to draft a will with a reversionary clause in it.

Reading the devise in the sequence transcribed by the testatrix, it appears that Ms. Jones's intent was merely to devise appellant Frejlach a life estate in which the testatrix desired her to live in the house. At best, the devise to appellant in Item II, paragraph (B)(6) would be defeasible only upon appellant Frejlach's death or her declining to exercise her right to the devised property, at which point the property would vest in appellee Hagaman. As such, this language

would essentially create a "plain vanilla" life estate, because any life estate devised is only defeasible upon the death of the life tenant or upon a devisee's decision to renounce the estate. *See* N.C. Gen. Stat. § 31B-1 (2009).

The trial court's order and the majority opinion, in lieu of declaring the rights of the parties, has the legal effect of creating right of entry language based on precatory conditions. A right of entry or reversionary language must be shown by the testator's language in the document and cannot be inferred by the court when interpreting the document. As there is no express and unambiguous language of reversion or termination upon the breach of the stated conditions, I would reverse the trial court and hold that Ms. Jones's will devised appellant Frejlach a life estate, and therefore I dissent from the majority opinion on this issue.